**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Moody Aubrey TAYLOR, Defendant-Appellant.**

No. 77–5443.

United States Court of Appeals, Fifth Circuit.

May 30, 1978.

Rehearing and Rehearing En Banc Denied June 26, 1978.

O. Jan Tyler, Dallas, Tex., Allan B. Hankins, Robert D. Forrester, Amarillo, Tex., for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Judith A. Shepherd, Dallas, Tex., Jimmy L. Talent, Asst. U. S. Atty., Fort Worth, Tex., Roger L. McRoberts, Asst. U. S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before CLARK and GEE, Circuit Judges, and LYNNE, District Judge.*

LYNNE, District Judge:

Appellant, Moody Aubrey Taylor, was convicted on three counts of willfully making and subscribing false personal income tax returns in violation of 26 U.S.C.

---

* Senior District Judge of the Northern District of Alabama, sitting by designation.

§ 7206(1).[1] The district court sentenced him to imprisonment for concurrent terms of two years each on Counts 1 and 2, relating to the tax years 1969 and 1970, and three years on Count 3, relating to the tax year 1972.

Taylor challenges his conviction on several grounds, relying primarily upon his assertion that proof of unreported gross receipts is not sufficient to support a conviction for violating Section 7206(1). We affirm.

Defendant Taylor was employed by Producers Grain Corporation (P.G.C.), a regional grain cooperative headquartered in Amarillo, Texas. In 1969, P.G.C. entered the custom cattle feeding business, feeding cattle P.G.C. feed for a fee plus the cost of feed. Defendant managed P.G.C.'s feeding operation from its inception and. became vice president in charge of its livestock division.

P.G.C. encouraged its employees to purchase cattle to be fed in P.G.C.'s feed lots. In the three tax years in question herein defendant bought and sold cattle for his own account and in partnerships and joint ventures with others, feeding them at P.G.C.'s feed lots.

Defendant did not report any livestock receipts on his 1970 or 1971 income tax returns and did not file Schedules E or F[2] with either return. On his 1972 return, defendant filed both schedules and reported some, but not all, of his livestock receipts for the year.

The government alleged that on each return defendant willfully failed to report substantial amounts of livestock receipts, partnership income, commissions and other income. Government Exhibit 117, introduced in the government's case in chief,

summarized the unreported transactions as follows:

| ITEM | 1970 | 1971 | 1972 |
|---|---|---|---|
| Livestock Receipts | $141,548.77 | $267,966.60 | $154,091.50 |
| Partnership Income | 509.97 | 692.12 | 13,853.02 |
| Commissions and Other Income | 7,125.99 | 99,459.07 | 89,817.07 |

In addition, during cross-examination of defendant the government introduced evidence of other unreported receipts.

In essence, Taylor's defense to the allegations was that his unreported income was offset by unreported losses. He testified that he did not know that he was required to report losses. Defendant kept no systematic written records of his cattle transactions, relying upon periodic mental calculations to determine that his losses exceeded profits.

We do not consider it oversimplification to assert that inherent in the scheme of self-assessment of income taxes is the imperative that a return by a taxpayer must be truthful as to every material matter. Section 7206(1) is a fraud statute. Unlike sections 7201 or 7203,[3] section 7206(1) requires the prosecution to prove neither intent to evade payment of taxes nor the existence of any taxable income. As it relates to the case sub judice, the section requires simply that the government prove that defendant willfully made and subscribed a return, that it contained a written declaration that it was made under penalties of perjury, and that defendant did not believe the return to be true and correct as to every material matter.

It is undisputed that defendant made and subscribed a return that contained a written declaration that it was made under penalties of perjury. The only questions at

---

1. 26 U.S.C. § 7206 (1977) provides that:
   Any person who—
   (1) *Declaration under penalties of perjury.*—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *
   shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

All statutory references herein refer to sections of the Internal Revenue Code, 26 U.S.C. §§ 1, *et seq.* (1977).

2. Schedule E is a supplemental income schedule of which income or losses from partnerships is computed. Schedule F is the schedule for reporting farm income and expenses.

3. Section 7201 prohibits the willful attempt to evade or defeat tax. Section 7203 proscribes the willful failure to file a return, supply information, or pay tax.

issue were whether the return was not true and correct as to every material matter and whether defendant possessed the requisite *mens rea.*[4]

■ The trial court charged the jury thus on the issue of materiality:

I also rule as a matter of law that if you find that a substantial amount of partnership income, livestock receipts, commissions, or other income was omitted from one or more of the federal income tax returns in issue here, such omission is of a material matter as contemplated by Section 7206, Subsection 1, of Title 26 of the United States Code.[5]

Counsel for defendant objected to the charge that the omission of livestock receipts is material as a matter of law.

■ This appeal raises squarely the question of whether a taxpayer's failure to report substantial amounts of gross livestock receipts on Schedule F renders the return materially false. We hold that it does.

■ The trial judge did not err in deciding the question of materiality as a matter of law rather than submitting it to the jury. We have long held that in a prosecution for perjury the materiality of the alleged false statement is a question of law. *Blackmon v. United States,* 108 F.2d 572, 574 (5th Cir. 1940). The rule applies to prosecutions under section 7206(1). *Hoover v. United States,* 358 F.2d 87 (5th Cir. 1966),

*cert. denied* 385 U.S. 822, 87 S.Ct. 50, 17 L.Ed.2d 59 (1966); *accord, United States v. Romanow,* 509 F.2d 26 (1st Cir. 1975).

■ The test for materiality in this case is whether the information is essential in order to permit the Internal Revenue Service to verify and monitor the reporting of income. *United States v. DiVarco,* 484 F.2d 670 (7th Cir. 1973).[6] In *DiVarco* the court held that the misstatement of the source of the taxpayer's income was material. The court rejected the argument that section 7206(1) required a showing of any understatement of income. The false statement in *DiVarco* had no direct relationship to the amount of the taxpayer's liability.

In *United States v. Romanow,* 509 F.2d 26 (1st Cir. 1975),[7] the court accepted the *DiVarco* premise that materiality might be based upon the likelihood that the false statement would be calculated to impede the IRS in its investigation and auditing of the return. The court stated that the measure of the materiality of a false statement is its potential impact. *Id.* at 27.

In the instant case the information required by Schedule F was vitally necessary for the IRS to verify defendant's claim that he realized a net loss from his livestock transactions. Without such information the IRS was compelled to conduct an extensive investigation of bank deposit records in an attempt to reconstruct defendant's income.

---

4. The trial court allowed defendant to introduce evidence of offsetting expenses to support his contention that he believed that he sustained a loss on his unreported income and that he believed that he was not required to report losses.

Defendant does not challenge on appeal the trial court's careful charge to the jury on the *mens rea* required for conviction.

5. Apparently in conflict with this instruction was a later instruction of the court. After instructing the jury in the definition of gross income under Treas.Reg. § 1.61–4(a), the court stated, "Let me advise you right here it is also the burden on the government to prove by—beyond a reasonable doubt that the receipts as shown by the evidence were income under the laws and regulations in this case." To the extent that such instruction is erroneous under our holding in this case, the error is harmless to defendant.

6. Omitted items may also be material where reporting is necessary "in order that the taxpayer estimate and compute his tax correctly." *United States v. Warden,* 545 F.2d 32 (7th Cir. 1976). Application of *DiVarco* to this case renders consideration of the *Warden* test unnecessary.

7. In *Romanow* the defendant was convicted of making a false statement on four Employers Quarterly Federal Tax Returns. Defendant falsely reported the amount of employees' wages deposited in the federal reserve bank. The Court held that the falsehood was material despite defendant's argument that the IRS made no use of the information. Defendant contended that the IRS computer receives data directly from the depository banks and is not programmed to consider the taxpayer's entry regarding deposits for the quarter.

Here the taxpayer conducted dozens of transactions involving over one hundred thousand dollars in receipts in each tax year and kept no written records. In such a case the burden imposed upon the IRS to verify the taxpayer's return is so extreme that it verges upon impossibility.

Other courts of appeals have considered directly whether omission of gross receipts is a material falsehood. In *Siravo v. United States,* 377 F.2d 469 (1st Cir. 1967), the court affirmed a conviction under section 7206(1), holding that gross receipts from the taxpayer's business were "material items necessary to the computation of income." *Id.* at 472. In striking similarity to Taylor, Siravo received wages, which he reported,[8] and also operated a jewelry assembling business. He made no entry on his Form 1040 opposite the heading "profit (or loss) from business," nor did he file a separate Schedule C. The government proved that he had received gross receipts ranging from $22,242 to $54,319 for the three years in question. The government offered no proof that taxpayer's receipts exceeded his expenses or that he realized any gross income from his business.

Although in *Siravo* one prosecution witness insinuated that the taxpayer's gross receipts and gross income might be the same, clearly the appellate court disagreed. 377 F.2d at 474. The court definitely treated the offense as the failure to report gross receipts from business, regardless of the existence of gross income.[9]

*Siravo* is factually similar to Counts 1 and 2 involved herein. In the tax years 1970 and 1971, Taylor failed to report gross livestock receipts and failed to attach Schedule F to his return.

*United States v. Morse,* 491 F.2d 149 (1st Cir. 1974) followed *Siravo.* The taxpayers allegedly understated their gross receipts. The court held that such misrepresentations were material under section 7206(1). Relying on *Siravo,* the court stated that the amount of gross receipts is an integral and necessary figure in the computation of taxable income and the amount of tax due. 491 F.2d at 157, n. 16.

Similarly, in Count 3 Taylor was convicted of understating the amount of his receipts and income on Schedule F of his 1972 return. *Siravo* and *Morse* suggest that Taylor's willful failure to report correctly his gross receipts renders his returns materially false for each year.

Defendant's position finds no support in *United States v. Ballard,* 535 F.2d 400 (8th Cir. 1976). There the court held that the government's burden under an indictment charging failure to report "substantial *income*" could not be carried by proof of failure to report "substantial *receipts." Siravo* was distinguished because its indictment, as was true for the indictment in the case at bar, charged willful failure to disclose gross receipts.

We are persuaded by the analyses of *Siravo* and *Morse* and hold that the omission of substantial gross receipts prevents the return from being true and correct as to every material matter. Requiring the government to prove the omission of gross income comes near to requiring the proof of additional tax liability. Such a definition of "material" would seriously jeopardize the effectiveness of section 7206(1) as a perjury statute and would imperil the self-assessment nature of our tax system.

■ In sum, we hold that the jury was correctly instructed that the omission of substantial amounts of livestock receipts from Taylor's income tax returns in 1970,

---

**8.** Siravo filed a return for tax years 1958–1960. He filed no return for 1961. Siravo was convicted under Section 7206(1) for making false returns for three tax years. He was convicted under Section 7203 for failing to file a return for the fourth year. We are, of course, concerned primarily with the convictions under Section 7206(1).

**9.** The definition of gross income derived from business is not identical to the definition of gross income derived from farming; *compare* Treas.Reg. § 1.61–3 *with* Treas.Reg. § 1.61–4. This distinction makes no difference to the outcome of this case, the important point being that in both cases the defendant was convicted for failure to report gross receipts, without regard to whether gross income was received.

1971 and 1972 would, as a matter of law, constitute the omission of a material matter. Taylor was permitted to present as a defense that he did not believe the omission was material because offsetting expenses rendered it without tax consequences. The existence of such offsets, however, did not go to materiality of the omitted receipts, but to the lack of *mens rea* in their omission.

We reject defendant's contention that because the schedules were not expressly promulgated by any regulation, section 7206(1) does not require truthful reporting on Schedules E and F. Defendant's reliance upon *United States v. Levy*, 533 F.2d 969 (5th Cir. 1976), is misplaced. There we reversed the conviction of a defendant who subscribed a false Internal Revenue Service Form 433–AB, a form used in connection with settlement negotiations.

Section 7206(1) pertains to willful subscription to "any return, statement, or other document" made under penalty of perjury. *Levy* involved the question of whether Form 433–AB was a "statement" within the meaning of the statute. We held that "statement" referred only to documents required by the Internal Revenue Code or any lawfully promulgated regulation. Since no statute or regulation authorized the use of Form 433–AB, the IRS could not lawfully require its execution under penalties of perjury.

The instant case does not involve interpretation of "statement." For each tax year in question defendant filed a Form 1040, which clearly is a "return." *See* Treas.Reg. § 1.6012–1.

While there is no explicit requirement in the regulations for the completion and filing of Schedules E and F, it is implicit in required Form 1040 that such schedules, when appropriate, become integral parts of such form and are incorporated therein by reference. *Cf. United States v. Siravo, supra.* Each Form 1040 filed by this defendant included lines reading "Pensions and annuities, rents and royalties, partnerships, estates or trusts, etc. (attach Schedule E)," [10] and "Farm income (or loss) (attach Schedule F)." [11] Therefore, we conclude that section 7206(1) requires the same duty of honest reporting on schedules as it requires for entries on the Form proper.

Thus, defendant's understatement of his receipts on his 1972 return rendered the return untrue and incorrect. Likewise, defendant's omission of schedules reporting his receipts for 1970 and 1971 rendered those returns false.[12]

Defendant contends that the trial judge erred in another respect. The court charged the jury that the government did not have the burden of proving any tax liability. Defendant objected to the charge, arguing that the government had implied that it did not prosecute defendant for the year 1969 because he owed no additional taxes; therefore, the jury was led to believe that the government thought that defendant had evaded taxes for the years for which he was prosecuted.

An IRS Special Agent, W. C. McMenamy, testified that IRS policy was not to recommend prosecution unless it could prove a tax deficiency. The government contends that any implication of tax liability was created by defendant's attorney, who, on cross-examination, initiated the questions to McMenamy about IRS policy.

*United States v. Johnson*, 558 F.2d 744 (5th Cir. 1977), forecloses extended discussion of this issue. There we held that government implications of underpayment of taxes did not alter the rule that tax liability is immaterial to a prosecution under section 7206(1). We affirmed that conviction, rejecting defendant's contention that he was entitled to introduce evidence that he had in fact overpaid his taxes. *A*

---

**10.** Line 37 on the 1970 and 1971 Form 1040 return. Line 39 on the 1972 return.

**11.** Line 38 on the 1970 and 1971 return. Line 40 on the 1972 return.

**12.** We make no legal distinction between the willful omission of material facts and the willful misstatement of material facts. *United States v. Cohen*, 544 F.2d 781 (5th Cir. 1977).

*fortiori,* in this case, the government did not have the burden of proving taxes due, and the court properly instructed the jury.

Defendant further contends that *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) proscribes this prosecution. He argues that Agent McMenamy's testimony was that IRS policy is to recommend prosecution to the Justice Department only where the IRS can prove a tax deficiency, and that the government did not attempt to do so in this case.

In *Rinaldi* the Supreme Court held that the trial judge erred in overruling the government's motion to dismiss the case, made after defendant's conviction. The basis for the motion was that the Justice Department had prosecuted defendant in violation of its policy not to prosecute for a federal offense following a state conviction of the same act.

■ The facts of the instant case fall far short of *Rinaldi.* Despite Agent McMenamy's testimony, official IRS policy deems a nominal tax deficiency one of several factors to be considered in recommending prosecution. *Internal Revenue Manual* 1218, pt. 9–2 (1973). Moreover, defendant does not contend that any Justice Department policy was violated by this prosecution. *Cf. Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). Finally, unlike *Rinaldi,* in this case the government vigorously opposes dismissal. *See Fry v. United States,* 569 F.2d 303 (5th Cir. 1978). For these reasons, *Rinaldi* does not preclude affirmance of this conviction.

The balance of defendant's arguments are directed at the sufficiency of the evidence against him. Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Barrera,* 547 F.2d 1250 (5th Cir. 1977), we conclude that the evidence amply supports the jury's verdict.

We need not reach defendant's contentions relating to the government's proof of unreported partnership income, commissions, and other income. The proof of substantial amounts of unreported livestock receipts is sufficient to sustain the verdict on each count. The evidence entitled the jury to infer that defendant's actions were "willful" and to reject defendant's "good faith" defense.

AFFIRMED.