UNITED STATES of America,
Plaintiff-Appellee,

v.

Herbert G. WHYTE,
Defendant-Appellant.

No. 82–1761.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1982.

Decided Jan. 31, 1983.

John Kappos, Merrillville, Ind., for defendant-appellant.

Andrew B. Baker, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before PELL, Circuit Judge, SWYGERT, Senior Circuit Judge, and MAROVITZ,* Senior District Judge.

MAROVITZ, Senior District Judge.

Appellant, Herbert G. Whyte ("Whyte") appeals from his four count conviction by a jury in the United States District Court for the Northern District of Indiana, Hammond Division, of willfully and knowingly making, subscribing and filing false federal income tax returns for the years 1975 through 1978 in violation of 26 U.S.C. § 7206(1).[1] The indictment charged Whyte with understating his adjusted gross income in the years 1975, 1976, 1977 and 1978. Each count of the indictment pertained to a separate year.

Whyte allegedly incurred personal income beyond that reported on his personal tax return by diverting checks representing income of his corporation to his personal use, and by using checks drawn on his corporation's bank account, falsely denoted as various business expenses, to pay his personal expenses.

On May 6, 1982, Whyte was sentenced to consecutive one year prison terms on each of the first three counts, three years suspended sentence on the fourth count and a one year probation period to begin after his release. He was fined $9,000.

On appeal, Whyte contends: (1) that since he was indicted for understating his adjusted gross income, the Government should not have been allowed to introduce evidence that his gross income was understated; (2) that the trial court erred in instructing the jury that a statement of adjusted gross income is material as a matter of law; (3) that the trial court improperly instructed the jury regarding a reliance defense; and (4) that the trial court erred in not granting Whyte's Motion for Acquittal for insufficiency of proof beyond a reasonable doubt. After a thorough review of the record, we conclude that Whyte's arguments are without merit and therefore affirm the conviction.

*Facts*

The defendant, Herbert G. Whyte, a citizen of Jamaica, came to the United States in 1956 for instruction in the field of engineering. He received a Bachelor of Science degree in Civil Engineering from Howard University in 1962. He then obtained a Masters in Transportation Engineering from Catholic University and later a postgraduate diploma in Traffic and Highway Engineering from Britton College of Technology in England.

In 1971, Whyte returned to the United States and began working in the engineering field. He worked in various engineering jobs until 1974 when he formed Herbert G. Whyte and Associates, Inc., (the "Corporation") an engineering consulting firm.

---

* The Honorable Abraham Lincoln Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. 26 U.S.C. § 7206 provides:
   Any person who—
   (1) Willfully makes and subscribes any return, statement or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

   .    .    .    .    .

   shall be guilty of a felony . . .

In 1975, Whyte hired Sylvester Goodson, an experienced public accountant, to create and keep the financial books and records for the Corporation. Goodson set up a "cash basis" accounting system for the Corporation. Under a cash basis method of accounting, income is recorded only when cash or checks are actually received. To keep track of income and expenses, Goodson prepared a cash disbursements journal, a general journal, a general ledger and a payroll ledger. Goodson did not prepare an accounts receivable journal because under the cash basis method of accounting the amount of money owed to the Corporation would not enter into the determination of how much income it had actually received. Goodson did suggest to Whyte and his secretary that an accounts receivable journal be maintained and instructed them as to how to prepare one.

Goodson was careful to inform Whyte that under the cash basis method of accounting it was important that all income to the Corporation be deposited in the corporate bank accounts. This was because income could only be documented through bank statements from the corporate checking and savings accounts. Goodson used a general journal to keep a record of all corporate transactions. He used the entry "cash on hand" to denote income that had been received by the Corporation but not yet deposited. He relied on Whyte to inform him as to when income had been received but not deposited. Corporate expenses were documented by check-stubs, cancelled checks and invoices. Expenses were classified and described by Whyte's notations on the check-stubs.

Goodson prepared the corporate income tax returns for the years 1975 through 1977, and Whyte's personal income tax returns for the years 1975 through 1978. In preparing Whyte's personal returns, Goodson stated that he would post wage payments to Whyte from the Corporation into the cash disbursements journal. From the cash disbursements journal, he would post an entry into the general ledger and also to Whyte's individual earnings sheet. From the earnings sheet Goodson produced Whyte's wage earnings slip or "W–2 form".

The Government contended that Whyte incurred personal income by cashing checks representing income of the Corporation, rather than depositing them into the corporate accounts, and by writing corporate checks, falsely denoted as various business expenses, to pay his own personal expenses.

The Government introduced evidence to show that in the taxable year 1975 the Corporation received three checks that were not deposited or only partially deposited into the corporate accounts. The total amount of money received but not deposited was $19,492. Of course, because the money was never deposited, it was never picked up as income to the Corporation. Since the money was never listed in the Corporation's books, it was never posted into Whyte's wage earning account even though it amounted to personal income to him.

In 1976, five checks were not deposited into the corporate accounts. Some of the money was used to make a mortgage payment on Whyte's personal residence. In addition, Whyte wrote a corporate check to Fordham University for $1,300. The check-stub described the payment as a "consulting expense", but the check was actually a tuition payment for Whyte's niece who had never done any work for the Corporation. Whyte's secretary testified that all of the income checks were endorsed by Whyte, and that Whyte had made out the check-stub. The total amount of money diverted from the Corporation or used for Whyte's personal expenses in 1976 was $16,844.

This trend continued into 1977 and 1978 when numerous checks made out to the Corporation as payee were cashed but never deposited. Whyte also continued to write checks on the corporate account to pay personal expenses. Three more tuition checks were written, and one check designated as "building repairs to the roof" was used to purchase stereo equipment for Whyte's home.

Whyte admitted cashing checks made out to the Corporation and using the proceeds

for his personal use. He knew that nothing in the Corporation's books would indicate the amount of funds taken for his personal use. He also admitted that he wrote corporate checks to pay personal expenses.

Throughout the trial, Whyte maintained that he was repaying himself for loans he made to the Corporation. He testified that due to the political climate in Jamaica at the time he left, he was forced to leave his assets behind with his Jamaican attorney. He claims that he used his Jamaican funds to pay for work done for the Corporation in Jamaica. Specifically, Whyte claims that work was done for the Corporation in Jamaica by Colin Husband, Roosevelt Thompson, Conrad Pyne and Patrick Penso. He claims that he paid Husband about $30,000, Thompson about $80,000 and Pyne about $40,000. Whyte produced no contracts for the work done by these people, and claims that he lost all his records of the Jamaican deals in an office fire.

Whyte's Jamaican lawyer testified as to his managing Whyte's Jamaican funds. The lawyer stated that he had paid about $80,000 to Thompson, but had no record of the payment. Thompson testified that he had performed design and architectural work for Whyte and in return had received about $80,000 from the attorney. Thompson also had no contract or record of the payment.

### Admissibility of Evidence Showing Understatement of Gross Income

■ Whyte's first argument is that the trial court erred in admitting evidence that his gross income was understated when the indictment charged an understatement of adjusted gross income.

Federal taxation of an individual's income is based upon the concept of gross income as defined in 26 U.S.C. § 61. Certain business related losses are then allowed to be deducted from gross income to reach an adjusted gross income figure. Certain personal deductions are then subtracted from adjusted gross income to reach taxable income, the amount which determines any tax due.

Whyte argues that since the indictment charged him with understating his adjusted gross income, it is reasonable to assume that the Grand Jury found no understatement of his gross income as listed, but found that certain unwarranted business deductions were claimed that reduced the gross income to a figure representing adjusted gross income which was incorrect. Therefore, Whyte argues that the Government should have been restricted in its proof to items that would reduce the stated gross income that were false or unwarranted and therefore would cause an understatement of adjusted gross income. Whyte has offered no real support for this argument and we have been unable to find any. It seems obvious that there are two ways for adjusted gross income to be understated. Either the original gross income figure was understated, or the deductions from gross income were overstated. Whyte tries to get around the former by assuming that the Grand Jury was satisfied with his gross income figure as reported on his tax return.

Whyte's argument apparently stems from an incomplete reading of the indictment. It is true, of course, that the indictment charges Whyte with understating his adjusted gross income. However, each count of the indictment ended with the phrase: "and he knew and believed that he had received income which made the adjusted gross income substantially higher than he had reported on the tax return, in violation of Title 26, United States Code, Section 7206(1)." Nothing in the indictment gives any indication that the Grand Jury was satisfied with Whyte's stated gross income figure. The plain meaning of the above quoted phrase indicates only that the Grand Jury believed that Whyte knew he had received income that would make his adjusted gross income higher than reported. Whether that income was received in the form of undeclared gross income or in the form of unlawful deductions is not specified in the indictment and there is no reason to assume that the Grand Jury believed it was received as the latter rather than the former.

In short, the district court was correct in not limiting the Government to proof of unlawful deductions as opposed to undeclared income. In fact, the charge of understatement of adjusted gross income is often proven by evidence of undeclared gross income. *See United States v. Oggoian,* 678 F.2d 671 (7th Cir.1982); *United States v. Scott,* 660 F.2d 1145 (7th Cir.1981).

### Materiality of a Statement of Adjusted Gross Income ·

■ Whyte contends that the trial court erred in instructing the jury that a statement of adjusted gross income is material as a matter of law. To support this argument, Whyte cites to *United States v. Null,* 415 F.2d 1178, 1181 (4th Cir.1969), in which the court stated that the test of materiality in respect to a false return case is "whether a particular item must be reported in order that the taxpayer estimate and compute his tax correctly." Whyte argues that this is a question of fact for the jury to decide. We do not agree. The issue of materiality under § 7206(1) is one of law for the court to decide. We agree with the rationale contained in *United States v. Taylor,* 574 F.2d 232 (5th Cir.1978), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978). In *Taylor,* the court stated:

> The trial judge did not err in deciding the question of materiality as a matter of law rather than submitting it to the jury. We have long held that in a prosecution for perjury the materiality of the alleged false statement is a question of law. The rule applies to prosecutions under section 7206(1).

574 F.2d at 235 (citations omitted).

Like the Fifth Circuit, we have consistently held that in a prosecution for perjury the materiality of the alleged false statement is a question of law. *United States v. Raineri,* 670 F.2d 702 (7th Cir.1982); *United States v. Rivera,* 448 F.2d 757, 758 (7th Cir.1971). In reaching the conclusion that materiality under section 7206(1) is a question of law we are in accord with our previous decision in *United States v. Oggoian,* 678 F.2d 671 (7th Cir.1982), in which we

upheld an instruction that stated "the Second Element that has to be proven is that the tax return was false as to a material matter. That is, it contained an understatement of adjusted gross income." We are careful to point out that our holding in no way interferes with the jury's obligation to decide the ultimate issue of whether the returns were willfully falsified which is generally the focal point of § 7206 cases. *See United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976). In the instant case the jury had to find Whyte had willfully understated his adjusted gross income in order to find him guilty. See *United States v. Warden,* 545 F.2d 32 (7th Cir. 1976). Thus, the trial judge correctly concluded that the materiality question was one of law for the court to decide.

### Reliance Defense Instruction

■ It is a valid defense to a charge of filing a false return if a defendant provides full information regarding his taxable income and expenses to an accountant qualified to prepare federal tax returns, and that the defendant adopts and files the return as prepared without having reason to believe that it is incorrect. *See United States v. Mitchell,* 495 F.2d 285, 287–88 (4th Cir.1974); *United States v. Baldwin,* 307 F.2d 577 (7th Cir.1962).

The trial judge refused to give defendant's instruction No. 8, which stated:

> If you find from the evidence that the Defendant provided all necessary information or access thereto, which information is accurate and complete to the best of the taxpayer's knowledge and belief, to a person holding himself out as qualified to prepare federal income tax returns for others, and that Defendant adopted, signed and filed his return as prepared without having reason to believe that it was incorrect, then Defendant should be found not guilty.

Instead, the court gave its own instruction which stated:

> If the Defendant provided his accountant with full information with relation to his income and expenses during the years

in question and that the Defendant then adopted, signed, and filed the tax returns on Form 1040 as prepared by the accountant without having reason to believe that it was not correct, then you will find the Defendant not guilty. If on the other hand, you find beyond a reasonable doubt that the Defendant did not provide full and complete information to his accountant, or that he knew that the return as prepared by the accountant was not correct and substantially understated here as adjusted gross income, then you are not required to find the Defendant not guilty simply because he did not prepare the return himself but rather had it prepared for him by another.

The only substantive difference between the two instructions is that Whyte's instruction states that the defendant could rely on the accountant having prepared the return if he provided all the necessary information to the accountant, *or access thereto.* The court's instruction did not contain the words *or access thereto.* Thus, Whyte argues that the trial court limited his defense by instructing the jury that they could find the defendant not guilty only if he actually furnished the information to the accountant himself, rather than just providing access to the information. Whyte contends that the evidence he presented showed that he did not deal with the books or records and that he expected Goodson to review all the records before preparing the returns.

■ We conclude that the district court's instruction was sufficiently precise to instruct the jury as to Whyte's theory of defense. *United States v. Mitchell,* 495 F.2d 285, 288 (4th Cir.1977). Both Whyte's instruction and the instruction given by the court ordered the jury to find Whyte not guilty if he had relied on Goodson to prepare the returns and Goodson had been provided with all the pertinent information. We do not agree that the absence of the words *or access thereto* in the court's instruction limited Whyte's theory of defense. If the jury had believed that Whyte relied on Goodson to prepare the returns and that Whyte believed the returns were correct, they would not have found him guilty.

Moreover, our review of the record leads us to believe that Whyte failed to lay a proper factual foundation for an instruction explaining the reliance defense. The essential elements of the reliance defense are: 1) full disclosure of all pertinent facts; and 2) good faith reliance on the accountant's advice. *United States v. Cox,* 348 F.2d 294, 296 (6th Cir.1965). There is strong evidence in this case that material facts were withheld from the accountant. Whyte himself concedes that expense checks were mislabeled and that he used corporate funds to pay personal expenses. There were no records for Goodson to look at that would have revealed how much personal income Whyte actually incurred. It is doubtful that the reliance instruction was even necessary. Whyte could not honestly have believed that his use of corporate funds to pay personal expenses, and his cashing of corporate checks without depositing the proceeds was not information that was pertinent and material for disclosure to one making out an income tax return. *Id.* at 296. It is essential for one to disclose all of the facts concerning his income in order to rely on the advice of his counsel or accountant. *United States v. Baldwin,* 307 F.2d 577, 579 (7th Cir.1962), *cert. denied,* 371 U.S. 947, 83 S.Ct. 501, 9 L.Ed.2d 497. Whyte did not disclose all such facts, and therefore was not entitled to rely on Goodson's advice.

### Sufficiency of the Evidence

■ Whyte contends that the trial court erred in denying his Motion for Acquittal for insufficiency of proof beyond a reasonable doubt. In this Circuit, a defendant's motion for judgment of acquittal is tested by the standard of "whether substantial evidence, taken in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), tends to show that the defendant is guilty beyond a reasonable doubt." *United States v. Fearn,* 589 F.2d 1316, 1318–19 (7th Cir.1978). "[A] trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon

the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Curly v. United States,* 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). We think the evidence presented met this standard.

The elements of the crime of willfully and knowingly making, subscribing, and filing a false federal income tax return in violation of 26 U.S.C. § 7206(1), are:

(1) that the defendant made or caused to be made, a federal income tax return for the year in question which he verified as true;

(2) the tax return was false as to a material matter;

(3) the defendant signed the return willfully and knowing it was false; and

(4) the return contained a written declaration that it was made under the penalty of perjury.

*United States v. Oggoian,* 678 F.2d 671, 673 (7th Cir.1982); *United States v. Scott,* 660 F.2d 1145, 1147 (7th Cir.1981).

There is no question that Whyte signed the return under the penalty of perjury. There was substantial evidence presented to show that Whyte's adjusted gross income was understated for the years in question. The evidence showed that Whyte diverted to his personal use, by either cashing or depositing in his personal account, income checks of the corporation.

The evidence also established that Whyte knew that the returns were false when he signed them. Whyte admitted that he cashed checks payable to the Corporation and used the proceeds to pay his personal expenses. He knew that nothing in the corporate records would indicate the amount of money that he diverted to his private use. He had been told by his accountant to deposit all corporate checks into the corporate accounts so that the income could be documented. Whyte maintained that he was merely repaying himself for loans he made to the Corporation. After assessing Whyte's credibility, as well as the credibility of his witnesses, the jury chose not to believe him. We see no reason to disturb that decision.

### Conclusion

Despite Whyte's vigorous attempts to persuade us otherwise, we remain convinced that there is no merit to any of his arguments and therefore affirm the conviction.

AFFIRMED.