**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clyde E. WILSON, and Stuart Van Eman, Defendants–Appellants.**

**No. 88–2733.**

United States Court of Appeals, Fifth Circuit.

Oct. 16, 1989.

David Berg, Cheri Duncan, Houston, Tex., for Van Eman.

George J. Parnham, W. Troy McKinney, Houston, Tex., for Wilson.

Evan M. Spangler, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for U.S.

Before BROWN, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

Appellants Stuart C. Van Eman and Clyde E. Wilson were both convicted of two counts of filing false personal income tax returns and one count of filing a false corporate income tax return in violation of 26 U.S.C. § 7206(1). Appellants were also convicted of conspiracy to file false income tax returns in violation of 18 U.S.C. § 371. On this appeal, Van Eman and Wilson challenge the sufficiency of the evidence and assert that the trial judge erred in instructing the jury. We affirm.

I.

In March of 1980, Van Eman and Wilson formed Sabine Refining and Trading Co., Inc. ("Sabine"), a corporation that was to engage in the business of "buying, selling, refining and trading of oil and its products." Wilson served as Sabine's president, Van Eman served as its treasurer, and each was a fifty percent shareholder in the corporation.

On July 21, 1986, Sabine opened a checking account with the Abilene National Bank (ANB) and made an initial deposit of $1,168,874. This initial deposit was received in the form of a wire transfer from Basin, Inc. ("Basin") to Sabine. Over the next thirteen months, Sabine received five additional wire transfers from Basin. The date and amount of each transfer was as follows:

| Date | Amount |
|------|--------|
| July 21, 1980 | $1,168,874.00 |
| July 22, 1980 | 714,082.50 |
| August 6, 1980 | 57,000.00 |
| August 20, 1980 | 286,469.52 |
| September 26, 1980 | 509,979.45 |
| August 25, 1981 | 358,525.37 |

Testimony at trial indicated that these transfers were made as payment for oil that Sabine sold to Basin. The transfers appear to be the only deposits made into the Sabine ANB account between July 21, 1980 and August 31, 1981.

At various points during this thirteen month period, usually soon after the wire transfers were received from Basin, wire transfers were made from the Sabine ANB account to the personal checking accounts of Van Eman and Wilson. Wilson approved the transfers in each case. The date, amount, and recipient of these transfers were as follows:

| Date [1] | Amount | Recipient |
|------|--------|-----------|
| July 22, 1980 | $100,000.00 | Wilson |
| July 22, 1980 | 100,000.00 | Van Eman |
| September 3, 1980 | 125,000.00 | Wilson |
| September 3, 1980 | 125,000.00 | Van Eman |
| September 30, 1980 | 250,000.00 | Wilson |
| September 30, 1980 | 250,000.00 | Van Eman |
| August 25, 1981 | 150,000.00 | Wilson |
| August 25, 1981 | 150,000.00 | Van Eman |

Van Eman and Wilson also wrote checks to themselves from another Sabine checking account at Texas Commerce Bank–Westwood. These payments were all made in 1980 and totaled $87,500 for both men.

Van Eman's 1980 tax return reflected income of $157,711. This total consisted of $40,000 in wages ($37,500 from Sector Refining, Inc. and $2,500 from Clinton Manges Oil & Refining Co.), $575 in interest income, $3,589 in capital gains, $26,047 in partnership and royalty income, and $87,-500 in other income. On the Schedule C attachment to Van Eman's return, the $87,500 is described as consulting fees. The return does not mention the $475,000 in wire transfers from the Sabine ANB account that were made in 1980.

Van Eman's 1981 tax return reflected income of $62,323. This total consisted of $23,760 in capital gains and $38,563 in partnership and royalty income. The return does not mention the August 25, 1981 wire transfer of $150,000 from the Sabine ANB account. Van Eman signed both his 1980 and 1981 returns, but they were prepared by a professional tax preparer.

Wilson's 1980 tax return reflected income of $139,307. This total consisted of $45,000 in wages from Sector Refining Inc., $637 interest income, $93,668 in business income (which included $87,500 less deductions in consulting fees from Sabine), and $2 in other income. The return does not mention the $475,000 in wire transfers from the Sabine ANB account that were made in 1980.

Wilson's 1981 tax return reflected income of $8,734. This total consisted of $99 in interest income, $8,083 in business income, and $552 in capital gains. The return does not mention the August 25, 1981 wire transfer of $150,000 from the Sabine ANB account. Wilson signed both his 1980 and 1981 returns, but they were prepared by a professional tax preparer.

Sabine's tax return for the tax year ending March 31, 1982 reflected gross receipts of $300,000. The return does not mention the August 25, 1981 wire transfer of $358,-525.37 from Basin. The return also does not list the August 25, 1981 transfers of $150,000 to Van Eman and Wilson as compensation of officers. The return was signed by Wilson as president of Sabine.

Based on this evidence, the jury concluded that Van Eman and Wilson filed false individual income tax returns for the 1980 and 1981 tax years, that they filed a false corporate tax return on behalf of Sabine

1. There was some discrepancy in the evidence about the exact date each transfer was made. The dates given here are those testified to by Cheryl Miller, an employee of ANB. To the extent there is a variance, it has no bearing on the outcome of this appeal.

for the tax year ending March 31, 1982, and that they conspired to file false tax returns.

## II.

Van Eman and Wilson challenge the sufficiency of the evidence supporting both the false filing and conspiracy counts. In evaluating appellants' challenge, we "consider the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in support of the jury's verdict. The evidence is sufficient if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Yamin,* 868 F.2d 130, 133 (5th Cir.) (footnote omitted), *cert. denied,* —— U.S. ——, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989).

### A. *The False Filing Counts*

In order to obtain a conviction for a violation of § 7206(1),[2] the government was required to show that Van Eman and Wilson willfully made and subscribed to the returns, that the returns contained a written declaration that they were made under penalties of perjury, and that Van Eman and Wilson did not believe the returns to be true as to every material matter. *See United States v. Taylor,* 574 F.2d 232, 234 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978).

■ Initially, appellants assert that there is no direct evidence to establish their identities as the ones who subscribed to the returns. The challenge must fail. "The fact that an individual's name is signed to a return, statement, or other document shall be prima facie evidence for all purposes that the return, statement, or other document was actually signed by him." 26 U.S.C. § 6064. Appellants made no effort to rebut this presumption. The subscription element is satisfied. *See United*

States *v. Carrodeguas,* 747 F.2d 1390, 1396 (11th Cir.1984), *cert. denied,* 474 U.S. 816, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985).

■ Appellants also challenge the evidence as being insufficient to demonstrate that they acted willfully and with the belief that the returns were false. We disagree. With regard to the corporate return for the tax year ending March 31, 1982, the government demonstrated that Basin made a wire transfer of $358,525.37 to Sabine as payment for oil. The government also presented evidence that transfers totaling $300,000 were made from the Sabine ANB account to Van Eman and Wilson. The corporate return reflected gross receipts of $300,000 for the year and made no mention of the transfers to appellants. Indeed, the return indicated expenditures of $245,287 for cost of goods sold, a figure completely incompatible with the $300,000 in transfers. This evidence was clearly sufficient for a reasonable jury to conclude that Wilson willfully subscribed to a false income tax return. Van Eman did not sign the return, and there is no evidence that he participated in its preparation. Nevertheless, because we conclude there is sufficient evidence from which a jury could find that there existed a conspiracy and that the corporate return was filed in furtherance of that conspiracy, we sustain Van Eman's conviction for filing a false corporate income tax return. *See Pinkerton v. United States,* 328 U.S. 640, 645–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). The jury reasonably could conclude that the false corporate return was filed to avoid any evidence of the transfers to appellants.

With regard to the individual returns, the government presented evidence that in 1980 both appellants received transfers of $475,000 in corporate funds that went unreported on their individual tax returns. The government presented evidence that in 1981 both appellants received a transfer of

---

2. Section 7206 of Title 26 of the United States Code provides that

    Any person who—

      (1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains

or is verified by a written declaration that it is made under penalties of perjury, and which he does not believe to be true and correct as to every material matter ...

    . . . .

shall be guilty of a felony....

$150,000 in corporate funds that went unreported on their individual tax returns. This evidence in itself is sufficient for a jury to conclude that Van Eman and Wilson filed false income tax returns. *See United States v. Thetford*, 676 F.2d 170, 175 (5th Cir.1982), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983); *United States v. Miller*, 545 F.2d 1204, 1215 & n. 13 (9th Cir.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977).

Appellants argue that the government never demonstrated that these transfers were reportable income or were spent on other than corporate purposes. These arguments misapprehend the required proof. The government does not bear the burden of demonstrating how the funds were spent. *See Thetford*, 676 F.2d at 175. "Once a taxpayer has taken control of funds diverted from a corporation and then fails to report such funds as income or to make any adjustment in the corporate books to reflect a return of capital, that is sufficient to imply willful intent" to file a false return. *Id.* In the present case, the Sabine tax returns for the years in which the transfers were made do not reflect that these transfers even took place, much less that they were loans or returns of capital. On this record, the jury was entitled to conclude that the transfers were income and should have been reported.

■ Van Eman argues that proof of willfulness on his part is lacking because his individual returns were prepared by a professional tax preparer. We have held that reliance on a qualified tax preparer is an affirmative defense to a charge of willful filing of a false tax return. *See Bursten v. United States*, 395 F.2d 976, 981 (5th Cir. 1968), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972). To avail himself of the defense, a defendant must demonstrate that he provided full information to the preparer and then filed the return without having reason to believe it was incorrect. *See United States v. Markham*, 537 F.2d 187, 195 (5th Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977); *United States v. Whyte*, 699 F.2d 375, 379 (7th Cir.1983). Van Eman present-

ed no evidence concerning either element, and thus the defense is unavailable to negate the jury's finding of willfulness.

### B. The Conspiracy Count

■ In a case such as this in which the government alleges a conspiracy solely between two persons, the government is required to demonstrate that there was an agreement between the defendants to commit a crime and that one of the parties committed an overt act in furtherance of the agreement. Van Eman and Wilson argue that there is insufficient evidence to demonstrate the existence of an agreement.

The government may establish the existence of an agreement through circumstantial evidence, *United States v. Wheeler*, 802 F.2d 778, 782 (5th Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987), and an agreement "may be inferred from concert of action." *Yamin*, 868 F.2d at 133. "[T]he Government need only present some evidence suggesting [a] knowing agreement to violate federal law." *United States v. Holcomb*, 797 F.2d 1320, 1327 (5th Cir.1986).

In this case, the government demonstrated that Van Eman and Wilson were the sole shareholders and directors of Sabine, and the jury could reasonably assume that they were familiar with the corporation's activities. Both received wire transfers of substantial funds from Sabine on the same days and in the same amounts. In tax returns prepared by different people and filed at different times, both failed to report the transfers as income in either 1980 or 1981, though both reported payments from Sabine that were made by check. The Sabine tax return for the tax years ending March 31, 1981 and March 31, 1982 did not reflect the transfers to Van Eman and Wilson as compensation to officers, returns of capital, or loans, and the return for the tax year ending March 31, 1982 clearly understated the corporation's gross receipts. From this evidence, the jury could reasonably infer the existence of an agreement between Van Eman and Wilson to file false income tax returns.

### III.

■ Appellants raise several complaints concerning the trial court's jury instructions. Initially, they complain of an instruction the district judge gave concerning an element of the government's proof. During the charge, which covered over thirty-seven pages in the record, the court made the following statements.

You must find also beyond a reasonable doubt that the income stated in the return was in truth and in fact understated; that the income was greater than the amount of one hundred fifty-seven thousand seven hundred and eleven dollars for the year 1980. And you must find that Mr. Van Eman deliberately and intentionally, as I have explained that term to you, knew at that time that he had understated his income and [you] must believe all these things beyond a reasonable doubt.

It doesn't make a hill of beans if it would have turn[ed] out he didn't owe any money to the Government, that is not what he is charged with. It doesn't make any difference if it would have increased his taxes or not increased his taxes, that's not the charge here. It doesn't make any difference if his income would be used up in legitimate deductions. I make these statement[s] to you because of some of the argument presented. Because that's not part of the charge.

The judge explained that these instructions applied to each of the five false filing counts. Upon completing his instructions, the district judge retired the jury and asked counsel if there were any additional instructions desired or objections to the instructions given. Counsel for Van Eman objected to the "hill of beans" comment. Counsel argued that a primary theory of the defense was that Van Eman and Wilson had no motive to lie on their returns because they owed no taxes. The basis of the argument was Internal Revenue Service (IRS) Certificates of Assessment that

the government had introduced and which showed no unpaid tax liability for the years in question. Counsel suggested that if the transfers in question were reportable income, the assessment certificates would have been adjusted.[3] The fact that the assessments indicated there were no unpaid taxes suggested that no taxes were owed because the transfers were not reportable income. From this the jury could conclude that the defendants lacked a motive to lie on their returns, motive being probative on the issue of intent. Counsel contended that the court's instruction gutted this defense because it told the jury that whether taxes were in fact owed was irrelevant.

In response, to counsel's objection, the court gave an additional instruction to the jury.

Finally, I made a statement to you which I surely—the attorneys considered I might have been confusing and I want to clarify it. And that is that I told you that the Government—it was not part of the proof in the case that the Government prove there was an actual tax deficiency or the income tax would have been greater. That is not an element of this violation.

The only element of the violation relating to the falsity was whether or not the income on those counts, two through five, was—and six in part, was misstated, the income was greater than set out in the tax return, if that is correct.

But I did not mean by that to say that motive, the reason a person does something becomes a non factor in the case because motive may be a factor in the case as probative of intent.

So if a person has no motive for doing something, that would be a factor to take into account that he did not have an intent to do that. On the other hand, if a person had a motive for doing something, then that might indicate that it would be probative of the intent to do that.

---

**3.** There was no evidence to indicate IRS policy concerning adjustment of assessment certificates. The only testimony before the jury was that of an IRS employee who stated that the figures on the assessments assumed that the returns were correct as filed.

So in this case there was some argument back and forth and I do not recall in specific details what the evidence showed, but the Government was arguing during the course of their argument that the reason that these misstatements were made was to avoid tax, it was to reduce the tax loads.

On the other hand, the Defendants' counsel was arguing to the contrary, under its evidence that this was not [ ] the case or there was evidence lacking that this would be the case.

So the Government does not have to prove motive, again, that's not something the Government has to prove. All the Government has to prove is intent. But motive is something you may consider in determining intent. I wanted to clarify that for you now.

Appellants contend that this additional instruction did not cure the court's original error and argue that the "hill of beans" comment improperly favored the prosecution and prevented the jury from considering a defense theory.

"[A] trial court is given broad discretion in wording its jury instructions and will not be reversed as long as the charge correctly states the substance of the law." *United States v. L'Hoste*, 609 F.2d 796, 805 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). When he gave the "hill of beans" instruction, the district judge was explaining the elements the government had to prove to make out its case. In that context, the instruction was correct, because in a § 7206(1) case it is "not necessary for the Government to prove a deficiency in tax for the years in question." *United States v. Jernigan*, 411 F.2d 471, 473 (5th Cir.), *cert. denied*, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969).

We must nevertheless consider whether the district court's comment improperly precluded the jury from considering a defense theory. "In deciding whether a defendant's theory of defense was adequately submitted to the jury, we look to the trial as a whole including the arguments of counsel ... to determine whether the charge as supplemented by the argument adequately presented the defense to the jury." *United States v. Ramirez–Rizo*, 809 F.2d 1069, 1071 (5th Cir.1987).

Initially, we note that the defense theory as laid out above is much clearer than the manner in which it was argued to the jury. The theory was raised only during closing argument and was presented most explicitly by counsel for Van Eman.

The very first witness for the Government was Miss Kelly, if you remember. She was an IRS custodian of the records. When she got on the stand she brought with her certificate of assessments....

I know it was boring to you at the time, but I went over these certificates of assessment and everyone recalls.... The corporate tax return *I showed you that not one farthing, not one penny was owed by the taxpayers or by the corporation.* On cross-examination, no matter when the tax return was filed Mr. Van Eman filed his return mostly in March of '83 and *nothing was owed.*

In fact there were credits that were applied, if you recall, *they over paid their taxes, Mr. Van Eman and Mrs. Van Eman and they got credit and it was zeroed out.* Why lie on a tax return. What was the point of lying on a tax return, except to cheat on the amount of taxes you owe.

I submit to you they have had these records now for years, all the years of the investigation they could have had time and these taxes were certified, tax assessments were certified within the last six months. Some of them within the last three weeks *shows this tax payer owed no money nor did the corporation.*

If you were going to cheat on a tax return, steal some money. If these two prosecutors had this company—had this individual owed any money they would have indicted him for it and proved it up. They didn't call a single agent....

But if the tax return[s] in this case weren't accurate and they have had years with the resources of the Internal Revenue Service to go over those returns

why weren't those certificates of assessments changed.

We will never know because they didn't put on the evidence because they expected you to panic and stampede and say these people were guilty because money goes from account "A" to account "B". And therefore without expert testimony it must be income to Stuart Van Eman. It must be because the two prosecutors want to conjecture that's what it is.

So the first issue that came up with the very first witness puts the lie, in my opinion, to the Government's case. *There was no tax due and owing and from the evidence that you have, I submit the only thing you can conclude is that they owed no taxes.*

The government is not required to prove that because this is a false swearing case, which this is, I suggest to you, as strong indications that Mr. Van Eman paid his taxes when they were due and they in fact put in tax returns not the subject of the indictment back to '77, '78, and *there is no tax due on those tax returns, no matter when those tax returns were filed.*[4]

It is not clear to us that the jury could have gleaned defense counsel's motive/intent argument from this discussion. To the extent the theory was before the jury, we do not think the trial judge's instruction prevented the jury from considering it.

The district court properly instructed the jury that in order to find the defendants guilty of the charged offenses it must find the defendants acted willfully and knowingly—"with the specific intent to do that which the law forbids." Subsequently, in response to defendants' concerns, the court instructed the jury that it could consider motive in determining whether the defendants had the necessary intent to commit the offense. In their closing arguments,

counsel for both Van Eman and Wilson had adequate opportunity to discuss their defense theory. These events placed the intent issue before the jury, and we do not think the court's "hill of beans" comment precluded the jury from considering the defense. As indicated above, the comment was not made in the context of the court's discussion of the mental element of the offense, but rather was made to clarify that in proving its false filing case, the government must only show an understatement of income. This does not necessarily implicate the intent defense. Moreover, we conclude that any prejudice to the defense theory that may have resulted was justified by the implication in the emphasized portions of counsel's argument above that the government did have to prove taxes were owed.[5]

We must also reject appellants' contention that the district court's comment improperly favored the prosecution. "Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial." *Moore v. United States*, 598 F.2d 439, 442 (5th Cir.1979). The record in this case reveals that the trial judge was not attempting to favor the prosecution but rather was attempting to present an accurate statement of the relevant law and to prevent the jury from being misled by the argument of defendants' counsel. The "hill of beans" phraseology certainly was more colorful than necessary, and we do not encourage the use of such language in jury instructions. The comment, however, did not exhibit a prosecutor's zeal on the part of the judge, nor do we think the jury could have construed the instruction in such a manner.

■ Finally, appellants complain that the district court erred in refusing to give requested jury instructions concerning good

---

**4.** Counsel for Wilson claims to have argued the same defense. The argument, however, is very unclear and, like the quoted passage, suggests a number of times that no taxes were owed.

**5.** In his opening statement, counsel for Van Eman argued that the government had to prove taxes were owed.

The government is right. They have to prove to you that not only did he knowingly falsely swear, perjure himself on his tax returns, they must also show you that he owed taxes at the end of day. And he didn't. So whether it is borrowing or whether it is income, it doesn't matter. It is [a] wash.

faith and the "bank deposits" method of proof. The district court instructed the jury that in order to find the defendants guilty of the charged offenses, the jury must find that the defendants acted willfully and knowingly. The court went on to define these terms.

When you do something, jurors, willfully and knowingly, when we commit that act voluntarily and on purpose rather than by accident or mistake. You do it willfully and knowingly ... in addition to that when you do something with the specific intent to do that which the law forbids. That is you do something with a bad purpose to either disregard or disobey the law. That's what we mean by the terminology here willfully and knowingly.

This instruction was substantially correct. *See United States v. Pomponio*, 429 U.S. 10, 11–12, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976). In order to find that the defendants acted willfully, the jury necessarily had to find that they did not act in good faith. An additional instruction on good faith was not necessary. *See id.* at 13, 97 S.Ct. at 25; *United States v. Lavergne*, 805 F.2d 517, 522–23 (5th Cir.1986).

 The court's refusal to give a "bank deposits" instruction also was proper. The "bank deposits" approach to a § 7206(1) case involves an analysis of a taxpayer's total bank deposits over the tax year to attempt to determine net taxable deposits. This figure is compared with reported income, and the jury is entitled to infer that the difference between the two figures is unreported income. *See United States v. Abodeely*, 801 F.2d 1020, 1023 (8th Cir. 1986). In a "specific item" case, however, the "usual strategy ... is for the Government to produce evidence of the receipt of specific items of reportable income by the defendant that do not appear on his income tax return or appear in diminished amount." *United States v. Horton*, 526 F.2d 884, 886 (5th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).

In this case, the government sought to prove the filing of false returns by demonstrating the transfer to defendants' bank accounts of specific and substantial funds from Sabine that were not reported as income on their tax returns. The district court concluded this was a specific items approach and refused to give the requested bank deposits instruction. Appellants contend that the government's proof, at least on counts 2 through 5, amounted to a bank deposits approach, apparently because there was no direct proof that the transfers from Sabine to Van Eman and Wilson were reportable income. Appellants' complaint goes to the sufficiency of the government's evidence and not to the method of proof. The government clearly was proceeding under a specific items theory, and the district court properly refused to give the requested bank deposits instruction.

AFFIRMED.