**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Louis Donald LAMBERTI,**
**Defendant-Appellant.**

**No. 87–5423.**

United States Court of Appeals,
Eleventh Circuit.

June 28, 1988.

Theodore J. Sakowitz, Federal Public Defender, Richard Klugh, Jr., Miami, Fla., for defendant-appellant.

J. Brian McCormick, Sp. Atty., U.S. Dept. of Justice, Miami, Fla., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges and BROWN [*], Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

Louis Donald Lamberti was paroled from sentence on an earlier offense on June 9, 1980. His parole officer's attempts to verify the employment information Lamberti submitted to him revealed that Lamberti was not regularly employed and had not earned the amounts he claimed. Lamberti's parole was revoked, and information on his employment and financial history led to indictment and conviction for making false statements to his parole officer, 18 U.S.C. § 1001, and for willfully making material false statements in his federal income tax return, 26 U.S.C. § 7206(1). He appeals, contending that (i) the indictment against him did not charge an offense (ii) he was selectively and vindictively prosecuted (iii) evidence obtained from his parole officer should have been suppressed because he was not advised of his *Miranda* rights in advance (iv) the evidence was insufficient to sustain either charge. We affirm.

### In the Beginning

Lamberti was paroled on June 9, 1980, after serving just over seven years of a twelve-year sentence for a 1972 conviction. The terms of Lamberti's probation were typical.[1] He was required to remain regularly employed and to report the pertinent facts to his probation officer each month both in person and in writing.

United States Probation Officer George Thomson was Lamberti's first parole officer. Beginning in August 1981, Lamberti stated in his written monthly reports to Officer Thomson that he was employed by the LaPorte Exxon gas station and that his job there was to wash and wax cars and perform general maintenance.[2]

---

[*] Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. A parole certificate is issued for each parolee. The reverse side of the certificate lists a set of 11 standard conditions of parole. Lamberti's certificate listed these conditions. *See* 28 C.F.R. § 2.40.

2. Samuel LaPorte, co-owner of the station, testified that Lamberti approached him sometime in 1981 with the idea of opening a car wash on the station property. LaPorte reacted favorably to the idea, and designated the space that was to be available for use as a car wash. Lamberti subsequently purchased some car washing supplies, stored them at the station, and came to the station about five days per week, usually for the morning hours only. There was never any fi-

As part of his supervision of Lamberti, Officer Thomson went to the station five to six times between April 1983 and December 1983. During all of those visits, Lamberti was either present on the premises or arrived while Thomson was there. Thomson never observed Lamberti washing or waxing cars or supervising others in those tasks during any of those visits, however.

Officer Rory McMahon assumed joint responsibility for Lamberti with Thomson on October 1, 1983. McMahon examined Lamberti's monthly supervision reports when he was first assigned to Lamberti's case. McMahon later testified that from the outset he was skeptical of Lamberti's assertions about his employment. McMahon also testified that he believed that Lamberti required closer scrutiny than usual because (i) Lamberti had 24 convictions on his record through the end of 1983 and had spent some 15 years in prison, and (ii) McMahon had information—apparently through either Thomson or John Sampson, a detective with the Metro-Dade Police Department[3]—that Lamberti continued to associate with individuals with criminal records (which itself was a violation of his parole).

McMahon and Thomson met with Lamberti on October 27, 1983, and inquired more closely than before about Lamberti's employment. At that meeting, Lamberti for the first time said that he did not work for LaPorte Exxon but rather operated his own car wash business at the same location. Because Lamberti now claimed he was self-employed, in order to verify Lamberti's claimed self-employment McMahon sought—in accordance with Parole Commission regulations[4]—financial records from Lamberti, including his tax returns.

Lamberti stated that his business records were at the Exxon station, and he agreed to furnish McMahon and Thomson with those records.

On November 10, 1983, McMahon and Thomson went to the LaPorte Exxon station and were directed to Lamberti, who was seated at a desk in a storage room. He showed them two books of records labeled "Donald Duck Car Wash."[5] Because those two books were voluminous, McMahon and Thomson declined to review them at the station that day, and instructed Lamberti to bring those records with him to the probation office on his next scheduled reporting date. He did so, and the records[6] were photocopied and returned to him.

In his monthly report for October 1983, filled out on November 11, Lamberti listed his place of employment as "LaPorte Exxon (D. Duck Car Wash)." In his November and December reports that year he went back to listing "LaPorte Exxon" as his employer.

Beginning on January 16, 1984, McMahon became Lamberti's sole parole officer. Between January of 1984 and late July 1984, McMahon conducted approximately twenty drive-by and fixed surveillances spread out evenly during that interval. The shortest was approximately fifteen minutes and the longest was approximately two and a half to three hours. All were conducted during daylight hours. McMahon was sometimes alone, and sometimes with other U.S. Probation Officers. At other times, he conducted the surveillances with Detective Sampson.

McMahon observed Lamberti physically present at the station on approximately half of the surveillances he conducted. During some of these surveillances, McMa-

---

nancial agreement concluded between the two of them as to sharing profits from the car wash. Although when the station was busy Lamberti sometimes helped out by performing small tasks —pumping gas, going on road calls, changing tires, and collecting money on the self-service island—Lamberti was never employed by LaPorte as a paid employee. Lamberti did wash cars, but LaPorte testified that he had seen Lamberti wash only fifteen to twenty vehicles between 1981 and 1984.

**3.** *See* n. 7, *infra,* and accompanying text.

**4.** The Parole Commission requires that self-employed parolees furnish financial statements twice a year, and submit their books and records of income and expenditures as well as copies of their tax returns.

**5.** Lamberti sometimes used the nickname "Donald Duck."

**6.** Lamberti brought *three* books that day.

**1534**

hon observed Lamberti in the presence of convicted criminals Thomas Picora, Richard Delgato, Richard Algonto, and Richard Delgesi. He never observed Lamberti or anyone else washing or waxing cars, nor was there a sign of any kind indicating the presence of a "Donald Duck Car Wash" business on the premises.[7] A check of the public records revealed that no occupational license had been issued or applied for at the LaPorte Exxon location for a car wash business under the name "Donald Duck Car Wash" or in Lamberti's own name.

McMahon suspected that Lamberti had submitted false information in his tax returns, in that he did not actually earn from washing cars as much income as he claimed. In April of 1984, McMahon released Lamberti's financial records to the Department of Justice. This was legitimate since new criminal conduct would itself have been a violation of Lamberti's parole, even though McMahon did not use that ground as a basis for revoking Lamberti's parole. Instead, McMahon decided merely to alert the authorities so they could investigate and determine whether or not Lamberti's actions in connection with those tax returns constituted new criminal conduct.

Subsequently, on August 20, 1984, McMahon sought a parole violation war-

rant for Lamberti, on the basis that he had (i) failed to work regularly (ii) submitted false supervision reports, and (iii) continued to associate with convicted criminals. A hearing was held in October and November of 1984, resulting in the revocation of Lamberti's parole. Lamberti then was incarcerated until February 1985, for the balance of his sentence on the 1972 conviction.

A ten-count indictment was returned against Lamberti on January 13, 1986. Lamberti was charged with eight violations of 18 U.S.C. § 1001,[8] the first of which charged that he knowingly submitted false income and expense records for the "D. Duck Car Wash" to his parole officer. The other counts charged that seven of his monthly reports in which he had stated that (i) he was employed by the LaPorte Exxon gas station and (ii) he had earned a specified amount of income[9] during the preceding month were false. He also faced completely independent charges of two violations of 26 U.S.C. § 7206(1)[10] for willfully making material false statements in his federal income tax returns for the years 1982 and 1983. Lamberti was tried in February 1987, and convicted on nine counts.[11] On May 1, 1987, he was sentenced to a total term of four years' imprisonment, consisting of concurrent sentences of four

7. Sampson without McMahon also conducted surveillances of Lamberti at the LaPorte Exxon on his own, both before and after McMahon became involved in Lamberti's case. From approximately 1980 until Lamberti's arrest on or about September 11, 1984 on the parole revocation warrant, Sampson conducted approximately a hundred such surveillances.

8. 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

9. Those amounts were:

| | |
|---|---|
| August 1981 | $1,164.23 |
| January 1982 | $1,589.05 |
| July 1982 | $1,350.00 |
| January 1983 | $1,710.00 |
| June 1983 | $ 450.00 |
| December 1983 | $1,200.00 |
| July 1984 | $ 350.00 |

10. 26 U.S.C. § 7206(1) provides:

Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

11. He was acquitted on the false statement charge involving his July 1984 monthly supervision report.

years on the § 1001 false statement counts and three years on the § 7206(1) false tax return counts.

Lamberti appeals, contending that (i) the indictment did not charge an offense (ii) he was selectively and vindictively prosecuted (iii) evidence obtained from his parole officer should have been suppressed because he was not advised of his *Miranda* rights in advance (iv) the evidence was insufficient to sustain either charge. We reject each of these contentions, and affirm.

### In the Indictment

█ The indictment against Lamberti charged him with making materially false statements in violation of 18 U.S.C. § 1001 and 26 U.S.C. § 7206(1). Lamberti in blunderbuss fashion contends that the indictment is so vague in alleging materially-false statements that he could not know whether the government was accusing him of: (1) not working; (2) overstating his income; (3) understating his income; (4) being self-employed rather than employed by another; (5) being employed by another rather than self-employed; (6) using a fictitious name; (7) inadequately describing the nature of his daily activities; (8) hiding a true source of income; (9) falsely stating the location of his business; or something else completely different.

We reject the notion that the indictment was subject to all these varying interpretations or deformities. A cursory inspection of the indictment is sufficient to reveal that the accusation against Lamberti was that he had falsely reported that he (i) was employed by LaPorte Exxon Inc., (ii) had earned specified amounts of money from that employment, and (iii) in the course of a business known as the Donald Duck Car Wash, had engaged in the transactions reflected in the income and expense records he furnished to his parole officers.

### Lamberti Not a Selective Target

█ Some selectivity in the decision to prosecute criminal offenses is constitutionally permissible and appropriate, and courts will normally tread lightly when reviewing that decision. *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547, 556 (1985); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 453 (1962). A defendant seeking to establish impermissibly selective vindictive prosecution must meet a substantial burden. He must show both that (i) others who have committed the same acts have not been prosecuted, and (ii) that the reason he was prosecuted was a "constitutionally impermissible motive[ ] such as racial or religious discrimination or [retaliation for his] exercise of constitutional rights." *Owen v. Wainwright*, 806 F.2d 1519, 1523 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987); *see also United States v. Pleasant*, 730 F.2d 657, 663 (11th Cir.1984), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed. 2d 146 (1984); *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir.1980), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). Lamberti has failed to make such a showing.[12]

### Miranda No Escape

█ Statements made by a parolee during interrogation by his parole officer without prior administration of *Miranda* warnings are admissible at trial. *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). Lamberti's escape

---

**12.** There is some authority to indicate that "personal vindictiveness on the part of a prosecutor or the responsible member of the administrative agency recommending prosecution" may suffice to satisfy the second element of that showing. *United States v. Bourque*, 541 F.2d 290, 293 (1st Cir.1976); *see generally Moss v. Hornig*, 314 F.2d 89 (2d Cir.1963). Lamberti contends that McMahon demonstrated just such a personal vindictiveness toward him. Even on the outside doubtful chance that this court would adopt this alternative standard, Lamberti still falls short of the required showing since the trial court was entitled to credit McMahon's testimony refuting Lamberti's contention. Moreover, the Supreme Court has recognized that a probation officer is obligated to report a parolee's wrongdoing when it comes to his attention, even if the officer learns of that wrongdoing through the parolee's own communications. *Minnesota v. Murphy*, 465 U.S. 420, 432, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409, 422–23 (1984). McMahon did no more than do his duty.

from *Murphy* requires he establish—which he cannot do—that his failure to assert his Fifth Amendment *Miranda* privilege against selfincrimination should be excused on the facts of this case.[13] Lamberti's efforts to distinguish his case from *Murphy* are unavailing.

### Way More Than Enough

 Lamberti's final contention need not long detain the court. There was pure, plain, ample evidence to sustain his convictions on the false statement charges under § 1001. As to the completely independent § 7206(1) tax charges, his assertion hinges on his untenable theory that an *overstatement* of income *cannot* be a *material* false statement for purposes of 26 U.S.C. § 7206(1), because it can lead *only* to overestimation and *overpayment* of tax liability.

With respect to the parole commission, the overstatement of income was an obvious material false statement because, while parole regulations do not require a parolee to earn any specific amount of income,[14] Lamberti was required to work regularly as a condition of his parole. Overstating his income gave, and was intended to give, the impression that Lamberti was working regularly when he was not. The statement obviously impaired the Parole Commission's ability to determine whether Lamberti was fulfilling the conditions of his parole. That is enough to trigger the prohibition of § 1001. *United States v. White,* 765 F.2d 1469, 1472–73 (11th Cir. 1985); *United States v. Lopez,* 728 F.2d 1359, 1362 (11th Cir.1984); *United States v. Fern,* 696 F.2d 1269, 1274–75 (11th Cir. 1983); *United States v. Diaz,* 690 F.2d 1352, 1357–58 (11th Cir.1982); *United States v. Lambert,* 501 F.2d 943 (5th Cir. 1974) (en banc) (binding upon 11th Circuit; *see Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981) (en banc)).

With respect to the § 7206(1) charges, we need not consider Lamberti's contention that an overstatement of income cannot be a violation of 26 U.S.C. § 7206(1). The indictment did not rest solely upon that ground. Instead, the indictment charged primarily that Lamberti's return information that the D. Duck Car Wash was his sole source of income was false.[15] The evidence overwhelmingly established this. No more was needed.

Having knocked away the supporting members for Lamberti's argument that the evidence was insufficient—his theory as to materiality—then that argument comes tumbling down as have its three companions before it.

AFFIRMED.

---

**13.** *Murphy,* 465 U.S. at 434–39, 104 S.Ct. at 1146–48, 79 L.Ed.2d at 424–27.

**14.** *See* n. 1, *supra.*

**15.** Lamberti himself emphasizes that a concealed source of income supports a tax fraud conviction even where no tax evasion is proved.