**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry FAWAZ, Defendant–Appellant.**

**No. 88–1861.**

United States Court of Appeals,
Sixth Circuit.

Argued May 22, 1989.
Decided July 28, 1989.

Patricia L. Blake, Susan Murnane, Kathleen Moro Nesi, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Detroit, Mich., for U.S.

Richard E. Zuckerman (argued), Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for Jerry Fawaz.

Before MERRITT and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

MERRITT, Circuit Judge.

Jerry Fawaz, a gas station operator, appeals his conviction on nine counts of tax crimes under 26 U.S.C. § 7206(1)[1] and § 7201.[2] He was convicted by a jury of filing false individual and corporate income tax returns and of evading the retail dealer's excise tax on diesel fuel, all during the years 1981 through 1983. Judge Suhrheinrich of the Eastern District of Michigan sentenced him to three years on each count, with all sentences to be served concurrently, and imposed certain fines.

Fawaz raises a number of issues on appeal. He raises the question whether understated gasoline purchases are "material" misstatements within the meaning of § 7206(1). Fawaz also argues that, assuming he prevails on the materiality issue, joinder of counts arising under § 7206(1) with counts arising under § 7201 resulted in undue prejudice to him; that the Government introduced no evidence that Fawaz had the requisite knowledge of falsity under three counts arising under § 7201 and insufficient evidence that Fawaz had the requisite knowledge of falsity under all of the remaining counts; and that the District Court erred in admitting certain documentary and testimonial evidence. We are confident that none of these arguments requires reversal of the judgment below.

## FACTUAL AND PROCEDURAL HISTORY

By the time of Fawaz's challenged tax returns, he had acquired several gas sta-

---

**1.** Section 7206(1) of the Internal Revenue Code provides that any person who

[w]illfully makes and subscribes any return, statement or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; ... shall be guilty of a felony....

28 U.S.C. § 7206(1).

**2.** Section 7201 prohibits any attempt to evade or defeat tax:

any person who willfully attempts in any manner to evade or defeat any tax imposed by [Title 28, U.S.C.] or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....

28 U.S.C. § 7201.

tions which he held as sole proprietorships. He had also incorporated Froggy's Fill–Up, Inc., which owned several more gas stations. By the end of 1982, through the sole proprietorships and Froggy's, Fawaz owned or controlled eight filling stations. Several family members worked for him in running the stations, and he employed Donald McNeff as his accountant for all these operations.

In April of 1988, Fawaz was indicted on eleven counts of filing false tax returns and evading excise tax on diesel fuel. During his trial, the Government successfully moved to dismiss Counts 3 and 10.

The remaining counts fall into two distinct groups. Counts 1, 2, and 4 charge Fawaz under § 7206(1) with filing false tax returns. Count 1 alleges that Fawaz understated his gas purchases at the privately held gas stations on his 1981 individual tax return, Form 1040, Schedule C–1, line 2a. Count 2 alleges a similar understatement in 1982, Form 1040, Schedule C–1, line 2. And Count 4 alleges that in 1981 he filed a false corporate return for Froggy's, again underreporting gas purchases, Form 1120, Schedule A, line 2. The Government claims that the total sum underreported exceeds $11,000,000.

Counts 5 through 9 and 11 charge Fawaz, under § 7201, with evading the excise tax on diesel fuel owed by the privately held gas stations. Each count relates to a quarterly return between the quarter ending March 31, 1982 to the quarter ending September 30, 1983. The Government claims that the total tax due and owing is $31,347.56.

## MATERIALITY OF UNDERREPORTED PURCHASES

Fawaz appeals from the District Court's denial of his oral motion for a judgment of acquittal on Counts 1, 2, and 4. Tr. 340–47. The motion was made pursuant to Fed.R. Crim.P. 29(a), which provides that a district court may enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction" on the challenged counts. Fawaz's motion was founded on the claim that the Government had failed to show that the understatements were "material" in the sense required by § 7206(1).

■ *Standard of Review.* In determining our standard of review, we note that Fawaz renewed his motion at the close of the trial, thus preserving it for review on the conventional standard of review. That standard is, for all practical purposes, identical with the standard imposed on the trial court. *United States v. Nelson,* 419 F.2d 1237, 1241 (9th Cir.1969). A motion for a judgment of acquittal must be granted if "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Curley v. United States,* 160 F.2d 229, 232–33 (D.C.Cir.), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850, *and cert. denied sub nom. Smith v. United States,* 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947); *see United States v. Gaines,* 353 F.2d 276 (6th Cir.1965); Wright & Miller, 2 *Federal Practice and Procedure* § 467 at 658–59 (2d ed. 1982). This standard has been approved by the Supreme Court as "the prevailing criterion for judging motions for acquittal in federal criminal trials." *Jackson v. Virginia,* 443 U.S. 307, 318–19 n. 11, 99 S.Ct. 2781, 2788–89 n. 11, 61 L.Ed.2d 560 (1979).

■ In applying this standard to a motion challenging the materiality of a false statement, we note that the materiality of a perjured statement on a tax return is a question of law, and is for the judge, not the jury, to decide. Though this rule has not been announced before today in this Circuit, it is the prevailing rule elsewhere. *United States v. Rogers,* 853 F.2d 249, 251 (4th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988); *United States v. Flake,* 746 F.2d 535, 537–38 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985); *United States v. Greenberg,* 735 F.2d 29, 31 (2d Cir.1984); *United States v. Whyte,* 699 F.2d 375, 379 (7th Cir.1983); *United States v. Gaines,* 690 F.2d 849, 858 (11th Cir. 1982); *United States v. Strand,* 617 F.2d 571, 574 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980);

*United States v. Taylor,* 574 F.2d 232, 235 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Romanow,* 509 F.2d 26, 28–29 (1st Cir.1975). A ruling apparently to the contrary, *United States v. Null,* 415 F.2d 1178, 1181 (4th Cir.1969), has since been rejected by the Fourth Circuit. *Rogers,* 853 F.2d at 251. And the rule is not only widespread: we believe it is also sound. It is supported by a prior case holding under analogous circumstances that materiality under 18 U.S.C. § 1001 is a question of law,

> [a]lthough the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive law, we believe [it is proper to treat] the issue of materiality as a legal question.

*United States v. Abadi,* 706 F.2d 178, 180 (6th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); *accord Kungys v. United States,* 485 U.S. 759, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988).

Here, the factual predicate of materiality is not in dispute: rather, the parties' disagreement focuses on the application of the law to the evidence before the court. We conclude that the trial court's determination that materiality had been established disposed of a legal question: if, given that holding, the evidence on questions for the jury was such that reasonable jurors could find the defendant guilty beyond a reasonable doubt, a Rule 29(a) motion for a judgment of acquittal would properly be denied. As with any question of law, we give the trial judge's determination that materiality had been established *de novo* review.

*Disputed issues.* Fawaz argued that the Government was required to prove materiality by introducing evidence that each understatement of purchases obscured some other false entry on the income-tax return on which it appeared. He claimed that the Government had failed to introduce any evidence to that effect, arguing that the testimony of his former accountant, Ronald McNeff, to the effect that the understatements were likely to have resulted in other incorrect entries, did not satisfy the Government's burden. In response, the Government argued that it had established materiality by showing that the false statements made it more difficult for the IRS to verify the returns on which they appeared. The District Court denied the motion, explicitly holding that materiality had been established. Tr. 347.

One question clearly presented by this record is whether the understatements are material to the income-tax returns on which they appear. Fawaz asserts that that is the only question properly before this Court, and urges us to regard a second argument made by the Government—that the understatements are material because they tended to make Fawaz's evasion of the excise tax on diesel fuel more difficult for the IRS to uncover—as an impermissible amendment of or variance from the indictment. We reject Fawaz's argument on this point. The Government specifically argued in its trial brief that materiality consisted in the fact that the understatements of gasoline purchases were material to the excise tax evasion scheme. The issue was thus before the trial judge, and his ruling is so terse that we cannot ascertain whether he relied on only one or on both of the asserted grounds of materiality. We regard them as alternative grounds of materiality: because we hold, as a matter of law, that the Government has established materiality on both theories, we reject Fawaz's appeal from the denial of his motion for a judgment of acquittal on grounds of materiality.

Finally, we note that some confusion has arisen in this case from the fact that, despite holding that materiality had been established at the time of Fawaz's Rule 29 motion, the District Court later committed the question of materiality to the jury. Tr. 396–97. This sequence of rulings does not alter the procedural posture of this issue on appeal, since neither party to this case raised any objection to the jury charge. Tr. 377–84. This appeal lies from the denial of the Rule 29 motion, and from the trial judge's holding at that time that "it's material." Tr. 347.

■ *Analysis.* In the present case the District Court properly concluded that the Government had established materiality by showing that the understatements of gasoline purchases made it more difficult for the IRS to verify both Fawaz's income tax returns and his diesel fuel excise tax returns.

Other courts have provided a consistent rule for determining this issue. The leading case is *United States v. DiVarco,* 484 F.2d 670 (7th Cir.1973), *aff'g* 343 F.Supp. 101, 103–04 (N.D.Ill.1972), *cert. denied,* 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974). In this case the defendants had been found guilty under § 7206(1) of misstating the source of income on their income tax returns. They appealed their convictions on the ground that the Government had failed to prove that they had in fact understated their income. The Seventh Circuit held that, though most § 7206(1) cases alleging a misstatement of the source of income also involved an understatement of income, the latter was not a prerequisite for materiality of the former. Instead, accurate information about the source of taxpayers' income is material in itself because without it the Internal Revenue Service cannot "police and verify the reporting of individuals and corporations." *DiVarco,* 484 F.2d at 673; *see also United States v. Lamberti,* 847 F.2d 1531, 1536 (11th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988).

*DiVarco* and cases following it consider that our tax-assessment scheme relies on truthful self-reporting by taxpayers in order to make the IRS's task of verifying returns feasible. Courts have held that false entries are material within the meaning of § 7206(1) if they baffle the IRS in its effort to perform that function. For example, in a case involving a taxpayer's failure to report gross receipts, the Fifth Circuit observed that

> [w]ithout such information the IRS was compelled to conduct an extensive investigation of bank deposit records in an attempt to reconstruct defendant's income. Here the taxpayer conducted dozens of transactions involving over one hundred thousand dollars in receipts in each tax year and kept no written records. In such a case the burden imposed upon the IRS to verify the taxpayer's return is so extreme that it verges upon impossibility.

*United States v. Taylor,* 574 F.2d at 236. As the First Circuit has said, "Materiality under section 7206(1) is to be measured objectively by a statement's potential rather than by its actual impact" on the IRS's verification efforts. *Romanow,* 509 F.2d at 28; *see also Greenberg,* 735 F.2d at 31–32.

We have already established a like rule for determining materiality of a false statement made to federal grand juries. Construing 18 U.S.C. § 1623(a) (prohibiting anyone testifying under oath before a federal grand jury from knowingly making any false material declaration), we have held that a false statement is material "if a truthful statement might have assisted or influenced the grand jury in its investigation." *United States v. Swift,* 809 F.2d 320, 324 (6th Cir.1987). "Merely potential interference with a line of inquiry is sufficient to establish materiality, regardless of whether the perjured testimony actually serves to impede the investigation." *United States v. Richardson,* 596 F.2d 157, 165 (6th Cir.1979) (quoting *United States v. Howard,* 560 F.2d 281, 284 (7th Cir.1977)). We see no reason to frame a different rule in the § 7206(1) context than the one we apply under § 1623(a).

Fawaz attempts to take his case out of the reach of the prevailing rule by arguing that an understatement of purchases is nothing other than an understated deduction. He claims that purchases are just a component of the cost of goods sold, and thus operate to reduce the taxpayer's deduction from gross sales. He characterizes an understatement of purchases as the functional equivalent of an understatement of a deduction, and notes that it is often prudent tax practice, rather than criminal activity, to forego a deduction (e.g., a deduction that a taxpayer fears will send up a red flag inducing the IRS to audit a return). Such understatements, he asserts, are not material.

This argument, though creative, does not persuade us. The cost of goods sold, if underreported, is not a deduction from income. Rather it is an expenditure which, when correctly stated, the taxpayer is entitled to subtract from his or her gross receipts in the process of computing gross profit and, thus, total income. If purchases are underreported, however, a number of related items involved in the calculation of total income could also be incorrect and might require verification by the IRS: inventory at the beginning and end of the year; other costs; other income; and total income. Testimony to this effect was introduced at trial. McNeff, testifying as a Government witness, indicated that, given the $4,000,000 understatement of gasoline purchases on the corporate return underlying Count 4, it was "unlikely" that all the other lines on that return were accurate. Tr. 209.

It is entirely possible that a taxpayer might underreport purchases in order to disguise gross receipts much higher than those reported; if that were the case, it would also be possible that total income was also underreported. If a return of this sort featured in a prosecution for tax evasion under § 7201, the Government would be obliged to show that total income actually was understated. A prosecution charging an understatement of purchases under § 7206(1), however, turns not on whether gross receipts and thus gross income were indeed much higher than the taxpayer has reported, but on whether the misstatement makes it significantly more difficult for the IRS to *verify* these lines and the return as a whole. We think the District Court, in answering the second of these questions, would have been entirely correct in answering it in the Government's favor. In the Government's examination of McNeff and in its oral arguments to the trial court, the Government did establish that the underreported purchases were integrally related to other important factors contributing to a correct calculation of Fawaz's and Froggy's total income, and that the "auditability" of this entire calculation was made more difficult by the misstatements. We conclude that, if the District Court relied on the theory that the false statements were material to the returns on which they appeared, its denial of Fawaz's motion for a judgment of acquittal was correct.

■ We also consider the Government's alternative argument—that the understatements of gasoline purchases were material to the acts of tax evasion on the diesel fuel excise tax returns—to be well supported by the cases interpreting § 7206(1) and by the Government's proof. A false statement is material when it hampers the IRS in verifying not only the return on which it appears but also related returns submitted by the defendant taxpayer or by a business entity in which he or she has a direct interest. *Greenberg*, 735 F.2d at 31. Indeed, it has been held that an overstatement of income charged under § 7206(1) was material because it disguised the defendant's violation of the terms of his parole. *Lamberti*, 847 F.2d at 1536. Here, the Government proved to the jury's satisfaction that Fawaz attempted to evade the excise tax on diesel fuel during the same period in which he was charged with underreporting, on his income tax returns, his purchases of gasoline. Certainly if gasoline purchases had been correctly stated on the income tax returns, the IRS's task of ferreting out the excise tax evasion scheme would have been more manageable.

■ Finally, we must reject Fawaz's argument that the Government's theories of materiality, whether raised below or not, are so abstruse that the law requires that they be explicitly announced in the indictment. This claim was not made before the trial court by any appropriate motion challenging the indictment. We therefore deem it to have been waived. Even if Fawaz had preserved this issue by a proper motion, however, we believe it is meritless. The controlling case is still *Markham v. United States*, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441 (1895), in which the Supreme Court held that an indictment for perjury need not "set forth all the circumstances which render [the false statements] material; the simple averment that they were so, will suffice." *Id.* at 325, 16 S.Ct. at 291 (quoting 2 *Chitty's Criminal Law* 307).

Here, the indictment charged Fawaz with making statements that "he did not believe to be true as to every material matter," and specified with particularity the relevant statements and the truth that they belied. If Fawaz wished to obtain a clearer statement of the Government's theories of materiality, he had the power to request a bill of particulars. *United States v. De-Brow*, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953); Fed.R.Crim.P. 7(f). He admits that he did not take this step. We see no defect in the indictment.

We conclude that the District Court correctly held the false statements charged in Counts 1, 2, and 4 to be material within the meaning of that term in § 7206(1). All of Fawaz's attacks on that ruling and on the Government's presentation of its theories of materiality are without merit.

## JOINDER

Fawaz argues that, if we hold that the motion for judgment of acquittal of Counts 1, 2, and 4 was improperly denied, we should proceed to hold that joinder of Counts 5 through 9 and 11 with those counts resulted in undue prejudice to him. Because we have affirmed the denial of the motion for a judgment of acquittal, we need not reach this issue.

## KNOWLEDGE OF FALSITY

Under this rubric we consider two assignments of error. First, Fawaz appeals from denial of a Rule 29 motion for a judgment of acquittal on Counts 5, 8, and 9 on the grounds that the Government introduced no evidence that Fawaz knowingly made any false statements on the underlying diesel-fuel excise-tax returns. Second, Fawaz argues that the Government introduced insufficient evidence to prove Fawaz's guilty knowledge as to the incorrectness of any of the returns involved in this prosecution. We are unable, after a thorough review of the record, the transcript and the briefs, to discover any motion to the trial court raising the second of these issues. We therefore decline to consider it.

The diesel-fuel excise-tax returns involved in Counts 5, 8, and 9 were evidently signed not by the defendant but by his brother, Jim Fawaz. Fawaz claims that no rational jury, evaluating the evidence adduced by the Government in this case, could conclude that Fawaz knew that false statements were made on these returns.

■ We construe this as an argument that the Government has failed to introduce sufficient evidence that Fawaz willfully committed tax evasion. Willfulness, of course, is an element of a § 7201 tax-evasion offense. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). It has been defined as "a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam). A conviction under § 7201 "may be sustained even when proof of willfullness is entirely circumstantial." *United States v. Grumka*, 728 F.2d 794, 797 (6th Cir.1984) (per curiam) (emphasis omitted).

■ We do not consider the fact that one of Fawaz's agents, rather than Fawaz himself, signed the returns underlying certain tax-evasion counts to compel a holding that Fawaz did not willfully submit them. The law does not require the defendant's own signature to sustain a conviction under § 7201: it merely requires "sufficient circumstances ... from which a reasonable jury could find that the defendant did authorize the filing of the return with his name subscribed to it." *United States v. Ponder*, 444 F.2d 816, 822 (5th Cir.1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972). Such circumstances were found to be present in two decisions of this Court: *United States v. Signer*, 482 F.2d 394, 398 (6th Cir.), cert. denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973) (evidence deemed sufficient where return was prepared by auditor but on the basis of a withholding of information by defendant); *United States v. Maius*, 378 F.2d 716, 718 (6th Cir.), cert. denied, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967) (evidence of defendant's being a party to a scheme to conceal income deemed sufficient).

In the present case the circumstantial evidence pointing to Fawaz's knowledge was at least strong enough to allow a rational jury to hold him responsible. Fawaz was the sole proprietor of the businesses involved; the signer of the returns, Jim Fawaz, was his employee. Fawaz's accountant Donald McNeff provided testimony that could support, though it does not compel, a conclusion that Fawaz was involved in the preparation of the returns signed by Jim Fawaz. McNeff testified that he understood the division of labor in Fawaz's businesses to place Fawaz in charge of site selection, customer service, and other managerial responsibilities, and to place his relatives, including Jim Fawaz, in charge of bookkeeping and records. Tr. 186. But McNeff also testified that his office staff contacted Fawaz's employees, while he himself would make his contacts directly with Fawaz and that his contacts about the relevant returns could have been with Fawaz. Tr. 122. We think these circumstances, combined with Fawaz's signature on diesel-fuel excise-tax returns containing exactly similar misstatements for different quarters, would justify a rational juror in finding that Fawaz knew that the returns signed by Jim Fawaz were false and proceeded, voluntarily and intentionally, to file them anyway.

## EVIDENTIARY ISSUES

Fawaz appeals from the District Court's ruling that certain documentary and testimonial evidence was admissible. The first of the two evidentiary issues raised here involves a balance sheet summarizing Fawaz's personal financial condition as of September 30, 1981. The document indicates on its face that it was prepared by "McNeff Accounting Service." Exhibit 36, at JA 75. This document was admitted over Fawaz's objection. Tr. 144–45. He now appeals its admission as an abuse of discretion.

McNeff testified that the document is a form he uses as a regular part of his business, that it was his practice to fill out this form using information obtained from the client, and that Fawaz himself typically provided the information entered on this form. Tr. 142–43. He also testified that he did not remember filling out this form, that he did not recall whether Fawaz himself provided the information on the form, and that Fawaz never acknowledged its accuracy in his presence. Tr. 142–44.

The trial judge did not indicate the grounds on which he ruled. We conclude, however, that the trial judge admitted this document on the grounds proposed to it by the Government, the business-record exception to the hearsay rule. Fed.R.Evid. 803(6); Tr. 144. We reject Fawaz' assertion that the District Court ruled on the basis of Fed.R.Evid. 801(d)(2) (defining as nonhearsay an admission of a party opponent), a rule clearly inapplicable given McNeff's testimony that Fawaz never adopted the document in question.

The business record exception is available only where the following conditions are met:

[The evidence] (1) ... must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Redken Laboratories v. Levin*, 843 F.2d 226, 229 (6th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). All of these requirements are met by the foundation laid by the Government. We see no error in the District Court's admission of this document.

Fawaz also objected to certain testimony given by McNeff. McNeff appeared as a witness for the Government. Cross-examining McNeff, Fawaz's attorney asked him whether, if all the other lines in the returns involving underreported purchases stayed the same, the underreporting of purchases would result in a higher tax. Tr. 164. On redirect the Government attorney returned to the subject. Her first question was whether it was likely that the

line about purchases was the only incorrect line on the return. McNeff never answered that question. She then asked him whether, if purchases were incorrectly reported to the tune of $4,000,000, and given his knowledge of Fawaz's financial condition, the misreported purchases could be the only incorrect line. McNeff answered "Yes, probably." She then asked him whether it could be that Fawaz was running a deficit of $4,000,000 and neither McNeff nor Fawaz knew about it. McNeff answered "Not likely." Finally, the Government attorney asked McNeff whether it was possible that a misstatement of $4,000,000 on the corporate return was the only incorrect line on that return, and McNeff responded, "No, not likely." Tr. 204–09.

Fawaz argues that this testimony was speculative and that it was expert testimony elicited from a fact witness never qualified as an expert. We disagree. As we stated in evaluating the materiality issue touching these returns, the possibility that an understatement of gasoline purchases corresponded to other inaccurate statements on the same return is directly relevant to the question whether the IRS was faced with a return that would be difficult, if not impossible, to verify. McNeff was asked about his own direct knowledge of the returns in the context of his knowledge of Fawaz's personal financial condition at the time they were returned, and stated only a conclusion that, given that knowledge, it was likely that the charged understatements produced other sworn misstatements. McNeff's personal knowledge of Fawaz's operations directly contributed to the value of his answers, as it tended to rule out the possibility that Fawaz had other resources from which the purchases not stated on the returns could have been made. We conclude that the inferences McNeff was asked to draw in answering the Government attorney's questions were "rationally based on [his own] perception" and thus satisfy the requirements of Fed. R.Evid. 701.

## CONCLUSION

None of Fawaz's issues on appeal warrant reversal of his conviction. We therefore AFFIRM the judgment of the District Court and dismiss this appeal.