USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1471 UNITED STATES, Appellee, v. FRANCIS DIRICO, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and McAuliffe,* District Judge. ______________ _____________________ John A. MacFadyen, with whom Harold C. Arcaro, Jr., was on _________________ ______________________ brief for appellant. Rita G. Calvin, Attorney, Tax Division, U.S. Department of ______________ Justice, with whom Loretta Argrett, Assistant Attorney General, _______________ Donald K. Stern, U.S. Attorney, Robert E. Lindsay and Alan ________________ ___________________ ____ Hechtkopf, Attorneys, Tax Division, U.S. Department of Justice, _________ were on brief for appellee. ____________________ March 11, 1996 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. McAULIFFE, District Judge. Appellant Francis DiRico McAULIFFE, District Judge. ______________ ("DiRico") challenges a number of rulings made by the district court during his criminal trial on charges of false subscription to a tax return, as well as the sentence imposed. We limit our discussion to the one issue raised by DiRico that has merit. While this court was considering the multiple issues raised on appeal, the United States Supreme Court issued its opinion in United States v. Gaudin, 115 S. Ct. 2310 (1995). That _____________ ______ decision clarified a point of law relevant to this case. Accordingly, the government suggested that the parties file supplemental briefs addressing DiRico's claim that when the trial judge determined "materiality" under 26 U.S.C. 7206(1) as a matter of law, he impermissibly directed the jury's guilty verdict, at least with regard to that essential element of the crime of conviction.  The parties were directed to file supplemental briefs on that issue by September 15, 1995. Having now considered those briefs and the Supreme Court's opinion in United States v. ______________ Gaudin, 115 S. Ct. 2310 (1995), we find that the challenged ______ instruction on materiality, although appropriate when given, see, ___ e.g., United States v. Romanow, 509 F.2d 26, 28 (1st Cir. 1975), ____ _____________ _______ nevertheless constitutes reversible error under Gaudin, which ______ decision is applicable to this case. Accordingly, we reverse and remand.  -2- BACKGROUND BACKGROUND __________ I. PROCEDURAL HISTORY. I. PROCEDURAL HISTORY. On March 30, 1993, a federal grand jury returned a three-count indictment against DiRico. Counts One and Two charged him with willfully attempting to evade his personal income tax liability for tax years 1986 and 1987, in violation of 26 U.S.C. 7201. Count Three charged him with willfully making and subscribing a false corporate tax return for Industrial Electric and Electronics, Inc., for the fiscal year ending June 30, 1987, in violation of 26 U.S.C. 7206(1). After a thirteen- day trial, the jury acquitted DiRico on Counts One and Two, but convicted him on Count Three. II. PERTINENT FACTS. II. PERTINENT FACTS. During the relevant tax years, DiRico was president and sole shareholder of Industrial Electric and Electronics, Inc. ("IE&E"), a cellular communications company. IE&E's employees performed routine bookkeeping and accounting functions for the company, and Warren Lynch served as the company's in-house accountant. IE&E also retained an outside accounting firm to review its books and prepare corporate tax returns.  IE&E managed its financial affairs with the assistance of a computer-based accounting system. Each IE&E customer was assigned an account number, and each customer's payment was logged into the computer system as a credit against the numbered account. Most customer account numbers began with the prefix "1" -3- or "2," but several were assigned the prefix "5." These so- called "5" accounts were the focus of the criminal prosecution.  Payments received on the "1" and "2" accounts were deposited in an IE&E corporate account at Bank of New England. Payments on the "5" accounts, however, were given to DiRico, who deposited them at the Abington Savings Bank, where he maintained several personal accounts. DiRico converted most of the "5" account receipts into cash, money orders, and cashier's checks, thereby frustrating any effort to trace the disposition of those funds. At the end of each month, IE&E employees generated reports related to cash flow, accounts receivable, and payments received. Those reports were secured in bound volumes and placed into storage. Reports related to the "5" accounts were stored separately. And, although receipts from all customers, including payments to the "5" accounts, were entered into the computer system, neither Lynch (who did not know how to operate the computer system) nor the outside accountants were aware of the existence of the "5" accounts. So, when the outside accountants prepared the corporate tax return for the fiscal year ending June 1987, they did not include monies received from the "5" accounts in calculating corporate gross income.  At trial, DiRico admitted that he knew the accountants were unaware of the "5" account receipts. He also conceded that he under-reported gross receipts on IE&E's 1987 corporate tax return. However, he claimed that despite under-stating its gross -4- receipts, the company actually paid the proper amount of corporate tax and, therefore, the return was "correct." He also argued that the false information on the 1987 corporate tax return was not "material" so long as IE&E actually paid the proper amount of federal tax due. With regard to the "materiality" element of the false subscription charge, the trial judge followed then-existing practice and gave the following instruction: It also must be a return that's false as to a material matter. That is, it was untrue when made and then known by the defendant to be untrue when he was making it. Materiality is a question largely for the Court to determine. The question of whether or not it is material is one on which I will instruct you. And I will instruct you that the amount of the gross receipts or, more accurately here because we deal with an accrual basis taxpayer, the sales reported on a corporate return is a material matter within the meaning of this particular statute.  (Trial Transcript, volume 14 at 104.) DiRico objected to the court's instruction in a timely fashion.  DISCUSSION DISCUSSION __________ The Supreme Court's recent opinion in United States v. _____________ Gaudin, supra, makes it clear that when "materiality" is an ______ _____ element of a charged crime and takes on a factual aspect, the jury must decide whether that element has been proved beyond a reasonable doubt. Plainly, an instruction that removes from the jury's consideration one of the essential factual elements of a crime charged cannot stand. Jury instructions cannot operate to -5- deprive a criminal defendant of his or her constitutional "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." Gaudin, ______ 115 S. Ct. at 2320.  In Gaudin, the defendant was charged with making ______ material false statements on Department of Housing and Urban Development ("HUD") loan documents in violation of 18 U.S.C. 1001. The trial court instructed the jury that the government was required to prove that the alleged false statements were material to the activities and decisions of HUD, and further instructed the jury that the "issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements." Id. at 2313. ___ The jury convicted the defendant, but the Court of Appeals for the Ninth Circuit reversed, reasoning that taking the question of materiality from the jury violated rights guaranteed to the defendant by the Fifth and Sixth Amendments to the Constitution. The Supreme Court subsequently agreed, holding that: The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality. Id. at 2314.  ___ -6- In the context of this appeal, we discern no obvious or substantive distinction between the "materiality" element of 18 U.S.C. 1001 and the "materiality" element of the crime with which DiRico was charged, i.e., false subscription to a tax ____ return in violation of 26 U.S.C. 7206(1). See, e.g., Knapp v. ___ ____ _____ United States, 116 S. Ct. 666 (1995) (remanding case for ______________ reconsideration of defendant's conviction under 26 U.S.C. 7206(1) in light of Gaudin); Waldron v. United States, 116 S. ______ _______ ______________ Ct. 333 (1995) (remanding case for reconsideration of defendant's conviction under 18 U.S.C. 1014 (false statements to a federally insured bank) in light of Gaudin).  ______ The government concedes materiality is an essential element of the crime of false subscription. It argues, however, that as a matter of law "gross receipts (sales) are a material ___________________ matter in the computation of income from a business and the amount of tax due on that income." (Supplemental Brief for the Appellee, at 11.) Accordingly, the government contends that, even in the wake of United States v. Gaudin, a trial judge may _____________ ______ properly instruct a jury that statements on a tax return regarding gross receipts are "material" as a matter of law. Given the facts of this particular case, we are constrained to disagree. DiRico's defense was straightforward: he argued that if deductible expenses equaled or exceeded gross receipts, any statement of gross receipts could not be material because that information could have had no tangible effect on the amount of -7- tax due --- proper calculation of which being the very purpose of completing and filing the return in the first place. The government responds persuasively by arguing that an accurate statement of gross receipts is essential to a correct computation of taxable income (as distinguished from simply the taxes due and payable). As the government contends, it need not prove an actual tax deficiency in any false subscription case in order to ___ demonstrate that a taxpayer's false statement was "material." The government need only prove to the jury, beyond a reasonable doubt, that the alleged false statement at issue could have influenced or affected the IRS in carrying out the functions committed to it by law. United States v. Romanow, 509 F.2d at ______________ _______ 28.1  It may well be a straightforward matter in this and most other cases for the government to produce sufficient evidence, possibly through the testimony of a representative of the IRS, to establish beyond a reasonable doubt that an incorrect gross receipts or taxable income entry has the potential to affect a legitimate function of the IRS. Nevertheless, "materiality" is both an essential element of the crime of false subscription, and a mixed question of law and fact. Accordingly,  ____________________ 1 In this case, for example, the government might meet its burden by satisfying the jury that defendant's false statements had "the potential for hindering the IRS's efforts to monitor and verify [defendant's] tax liability." United States v. Greenberg, _____________ _________ 735 F.2d 29, 31-32 (2d Cir. 1984); see also United States v. _________ ______________ Taylor, 574 F.2d 232, 235 (5th Cir.), cert. denied, 439 U.S. 893 ______ ____________ (1978); United States v. Fawaz, 881 F.2d 259, 263-64 (6th Cir. ______________ _____ 1989); United States v. DiVarco, 484 F.2d 670, 673 (7th Cir. _____________ _______ 1973), cert. denied, 415 U.S. 916 (1974). ____________ -8- the government must prove and the jury (not the court) must ultimately find an alleged false statement to be material beyond a reasonable doubt in order to convict. In general, to be material, "the statement must have a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed. " Gaudin, 115 S. ______ Ct. at 2313 (quoting Kungys v. United States, 485 U.S. 759, 770 ______ ______________ (1988)). Determining whether a particular statement is "material" requires the jury to apply the legal definition of materiality to the particular facts of a given case. Id. at ___ 2314. In light of the Supreme Court's recent opinion in Gaudin, we conclude that in the context of a prosecution for ______ false subscription under 26 U.S.C. 7206(1), "materiality," being an element of the offense and a mixed question of law and fact, is a matter for the jury to decide. While the trial judge must properly instruct the jury on the legal definition of materiality, only the jury can decide whether the facts proved at trial meet that legal standard. That the materiality of a statement might appear to be self-evident, or the evidence tending to establish that element might seem overwhelming, does not empower the trial court to remove consideration of that element from the jury. Because the "materiality" issue in this particular case was not conceded by the defendant, and in fact defendant asked that it be submitted to the jury (before the Gaudin decision issued) the jury should have decided the matter. ______ -9- The government's argument that the faulty jury instruction amounted to harmless error is appealing, but we are persuaded that in light of the fact that the trial court's instruction was intended to and did effectively direct a finding of "materiality," the only proper disposition is to remand. Our analysis of this issue begins with the Supreme Court's opinion in Chapman v. California, 386 U.S. 18 (1967), _______ __________ where the Court recognized that some constitutional errors in the course of a criminal trial may be harmless and, therefore, do not require reversal of a conviction. The Court has since explained the Chapman harmless error analysis as follows:  _______ Consistent with the jury-trial guarantee, the question [Chapman] instructs the _______ reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. . . . The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict in this ____ trial was surely unattributable to the error.  Sullivan v. Louisiana, 113 S. Ct. 2078, 2081 (1993) (citations ________ _________ omitted). While most constitutional errors have been held amenable to the Chapman harmless error analysis, others are of _______ such a fundamental nature that they will always invalidate a conviction. Accordingly, "[t]he question in the present case is to which category the present error belongs." Id. ___ -10- The Due Process Clause of the Fifth Amendment guarantees that no one shall be convicted of a criminal offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In __ re Winship, 397 U.S. 358, 364 (1970). That constitutional ___________ guarantee is obviously interrelated with the defendant's Sixth Amendment right to trial by jury:  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." . . . The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty." Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence.  Sullivan, 113 S. Ct. at 2080. In Sullivan the Court reasoned ________ ________ that because the trial court erroneously defined "reasonable doubt" for the jury, the harmless error analysis articulated in Chapman was inapplicable: _______ Since, for the reasons described above, there had been no jury verdict within the meaning of the Sixth Amendment, the entire premise of Chapman review is _______ simply absent. There being no jury verdict of guilty-beyond-a-reasonable- doubt, the question whether the same ____ verdict of guilty-beyond-a-reasonable- doubt would have been rendered absent the constitutional error is utterly meaningless. There is no object, so to ______ speak, upon which harmless-error scrutiny can operate. The most an appellate court -11- can conclude is that a jury would surely ____________ have found petitioner guilty beyond a ___________ reasonable doubt -- not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have _______________________ been different absent the constitutional ______________ error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty. Id. at 2082 (citations omitted). So, where a jury has not ___ rendered a verdict that addresses every essential element of the charged offense, and therefore has not rendered a verdict on the crime charged, the question of whether the same verdict would have been rendered absent the constitutional error is meaningless. Here, because the jury did not determine whether the government had proved, beyond a reasonable doubt, the existence of an essential factual element of the crime of false subscription (i.e., materiality), there was "no jury verdict ____ within the meaning of the Sixth Amendment" and harmless error analysis is inapplicable. Id. at 2081-82. ___ In light of our conclusion that, at least in this case, "materiality" was an essential factual element of the crime charged, the trial court's withdrawal of that issue from the jury constituted a "structural defect" in the trial process, Arizona _______ v. Fulminante, 499 U.S. 279, 310 (1991), which requires reversal __________ of DiRico's conviction. Simply stated, we cannot conclude on appeal that the government proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict -12- obtained," since a verdict of guilt as to every essential element was never obtained. Chapman, 386 U.S. at 24.  _______ CONCLUSION CONCLUSION __________ For the foregoing reasons, defendant's conviction is reversed and the case is remanded for further proceedings not inconsistent with this opinion. -13-