CLYDE E. AND LINDA WILSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 17729-91
United States Tax Court
T.C. Memo 1994-454; 1994 Tax Ct. Memo LEXIS 459; 68 T.C.M. (CCH) 693; September 8, 1994, Filed *459 Decision will be entered under Rule 155. P was convicted of two counts of filing false personal income tax returns, one count of filing false corporate returns, and one count of conspiracy to file false income tax returns for the years at issue. The normal 3-year statute of limitations having run, R contends that assessment and collection of the deficiencies are not time barred since P filed fraudulent returns with the intent to evade tax. P contends he did not omit items from income; he was acting as an agent. 1. Held: The assessment and collection of deficiencies are not barred by the statute of limitations since R has established, by clear and convincing evidence, that P intentionally sought to evade the payment of taxes known to be owing. 2. Held, further, P was not acting as an agent in receiving and spending the funds in question. P is liable for the full amount of the deficiencies determined by R. 3. Held, further, P is liable for the additions to tax for fraud that R determined. Sec. 6653(b), I.R.C.
For petitioners: Bruce Locke. For respondent: Richard T. Cummings. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge *460 : By notice of deficiency dated May 20, 1991, respondent determined deficiencies in Federal income tax and additions to tax against petitioners as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
1980
$ 238,216
$ 119,108
1981
66,348
33,174
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Respondent has conceded that petitioner Linda Wilson is an innocent spouse within the meaning of section 6013(e) and has no liability for any income taxes or additions to tax for the years in issue. We accept that concession and so hold. The issues remaining for decision are: (1) Whether the statute of limitations bars assessment and collection of any deficiencies for the years in issue, (2) if not, the appropriate amount of the deficiencies for those years, and (3) whether petitioner is liable for the additions to tax for fraud. Hereafter, the term "petitioner" is intended to refer to petitioner Clyde E. Wilson. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts filed by the *461 parties and attached exhibits are incorporated herein by this reference. Petitioners resided in Houston, Texas, at the time the petition in this case was filed. Petitioners are calendar year taxpayers. Each of them signed, and they timely filed, joint income tax returns for 1980 and 1981. Background
In March 1980, petitioner, Joe Schero (Schero), and Stuart C. Van Eman (Van Eman) formed Sabine Refining and Trading Co. (Sabine) to trade and deal in oil. At that time, Schero owned an oil refining company of which petitioner was the chief executive officer and Van Eman, a former banker and bank examiner, was the president. Both petitioner and Van Eman left Schero's company to run Sabine. The plan was for each of the three men to own a third of Sabine, but shortly after formation, petitioner and Van Eman bought Schero's interest. Sabine was then owned 50 percent by petitioner and 50 percent by Van Eman. Sabine actively engaged in buying and selling crude oil during the months of May through August 1980, and not thereafter. Sabine was a "reseller" of crude oil; Sabine purchased and resold crude oil without changing its form. All of Sabine's transactions were accomplished *462 through the instantaneous acquisition and transfer of title to crude oil in a pipeline. Sabine filed its 1981 and 1982 Federal income tax returns on the basis of a fiscal year ending April 30. The U.S. Department of Energy investigated Sabine's operations and issued a remedial order on August 8, 1986, in which it found that Sabine had overcharged customers for in-pipeline oil. The remedial order found that during May through August 1980, Sabine committed "layering". The term "layering" means the illegal practice of buying in-pipeline oil at one price and selling it at a higher price without performing some other service such as gathering, transporting, or storing. Petitioner and Van Eman were held personally liable for the overcharge. Transfer of Sabine Funds to Petitioner
During 1980, petitioner and Van Eman each received a total of $ 475,000 in wire transfers from Sabine's bank account to their own accounts. Petitioner's receipts were as follows: Table 1
Date
Amount
July 22, 1980 $ 100,000
Sept. 3, 1980 125,000
Sept. 30, 1980
250,000
On August 25, 1981, petitioner and Van Eman each received $ 150,000 in wire transfers from Sabine's bank account *463 to their own accounts. The transfers were not reported on petitioner's tax returns for 1980 or 1981. There is no way of telling from Sabine's 1981 and 1982 returns that those transfers were made; the transfers to petitioner and Van Eman are not reflected as either expenses, loans to stockholders, or distributions to stockholders. In addition to those transfers, petitioner received $ 87,500, by check, from Sabine in 1980. That amount was reported on petitioner's tax return as gross receipts from a sole proprietorship. Dealings with Mariah, Petro-Nicholas, and Texas Technical
Petitioner and Van Eman each acquired 26 percent of the stock of Mariah Drilling Co. (Mariah) in May 1980. Mariah was the owner of all of the outstanding stock of Nicholas Petroleum Co. (Petro-Nicholas) and TexasTechnical Equipment Co. (Texas Technical). The Mariah stock was restricted stock issued in petitioner's name. In consideration for the shares of Mariah stock, petitioner and Van Eman each agreed to contribute operating funds to Mariah. Petitioner's payments in discharge of that obligation are shown in tables 2 and 3, infra p. 6, as expenditures for Mariah, Petro-Nicholas, and Texas *464 Technical. Petitioner's Expenditures
Petitioner made the following expenditures in 1980 out of funds received by him from Sabine: Table 2
Payee
Amount
Date
Purpose
Van Eman
$ 1,000
May 15
Interest in oil and gas lease
Van Eman
12,500
Aug. 7
Luling oil and gas operations
Woods Boots
481
Sept.
Boots
Mariah Drilling Co.
20,000
Sept. 18
Operating costs
Texas Technical
25,000
Sept. 19
Inventory and overhead
Van Eman
28,018
Sept. 29
Luling oil and gas operations
Roy McCharen
12,225
Sept. 29
Rolex watch
Wm. H. White & Assoc.
5,000
Oct. 6
Legal fees
Texas Technical
25,000
Oct. 8
Inventory and overhead
Highams Cadillac
5,760
Oct. 8
Auto purchase
Highams Cadillac
541
Oct. 8
Auto purchase related
Petro Nicholas
50,000
Oct. 9
Operating costs
Texas Technical
50,000
Oct. 10
Equipment and supplies
Petro Nicholas
25,000
Nov. 10
Operating costs
Petro Nicholas
20,000
Nov. 21
Operating costs
O. A. Hughes
7,500
Nov. 25
Land man, re Luling lease
Total
$ 288,025
Petitioner made the following expenditures in 1981 out of funds received by him from Sabine: Table 3
Payee
Amount
Date
Purpose
Van Eman
$ 5,000
Jan. 5
Luling oil and gas operations
Sabine Refining
12,500
Jan. 5
Overhead
Barbara Lee
200
Feb. 9
Paycheck
William H. White
510
Mar. 2
Legal fees
Spring Branch Bank
12,973
Oct. 1
Golf club membership
Sabine Refining
6,000
Dec. 15
Office expenses
Total
$ 37,183
*465 Petitioner's Tax Returns
Jerry Zoller (Zoller), a certified public accountant, prepared petitioner's 1980 and 1981 returns. Zoller prepared the returns from detailed schedules prepared and submitted to him by petitioner. Petitioner did not inform Zoller about the funds he received by wire transfer from Sabine in those years. Prior Conviction
Petitioner's activities with regard to Sabine gave rise to his indictment in 1987, on two counts of filing false personal income tax returns, one for 1980 and one for 1981, and one count of filing a false corporate income tax return in violation of section 7206(1). Petitioner was also indicted on one count of conspiracy to file false income tax returns in violation of 18 U.S.C. section 371. The conspiracy count charges that, from March 1980 until at least March 1983, petitioner and Van Eman: did unlawfully, knowingly, and willfully, combine,conspire, confederate, and agree together * * * to defraud the United States of America by impeding, impairing, obstructing and defeating the lawful Government functions of the Internal Revenue Service * * * in the ascertainment, computation, assessment, *466 and collection of the revenue: to wit, federal income taxes.
The objective of the conspiracy is described in the indictment, in part, as follows: to divert corporate receipts of Sabine * * * to their personally owned bank accounts and then to conceal their receipt of the diverted money by false entries on the books of account * * * STUART VAN EMAN and CLYDE E. WILSON failed to declare this income from diverted corporate receipts in any manner on their individual income tax returns in order to evade the payment of taxes on this income.
The manner and means by which the conspiracy was carried on are described in the indictment, in part, as follows: 1. STUART VAN EMAN and CLYDE E. WILSON caused withdrawals to be made from Sabine bank accounts and deposited the funds into their personal bank accounts. * * * 3. * * * The consulting fees allegedly paid by Sabine to Mariah were never reported as income on the Mariah corporate books but were diverted directly to STUART VAN EMAN and CLYDE E. WILSON and deposited into their personal accounts. This enabled Sabine to take a false deduction for the diverted money thereby reducing its net income, as well as enabled STUART *467 VAN EMAN and CLYDE E. WILSON to conceal the receipt of the income from the Internal Revenue Service. 4. * * * STUART VAN EMAN and CLYDE E. WILSON instructed Sabine's accountant and tax return preparer to reclassify a substantial portion of the so-called loans to stockholders * * * to produce false deductions on Sabine's books of account and to conceal their receipt of income from the Internal Revenue Service. * * * 6. Both defendants failed to report on their personal income tax returns the funds received from Sabine with the exception of the amounts recorded in Sabine's books of account's as officers' salaries (payroll). The filing of a false return for 1980 count charges: That on or about the 12th day of October, 1981, * * * CLYDE E. WILSON * * * did wilfully make and subscribe a 1980 U.S. Individual Income Tax Return, Form 1040, * * * which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 1040 he did not believe to be true and correct as to every material matter in that the said Form 1040 reported on Line 1a, Part I, Schedule C gross receipts or sales of NINETY *468 SEVEN THOUSAND FIVE HUNDRED DOLLARS ( $ 97,500.00); whereas, as he then and there well knew and believed, the correct amount of gross receipts or sales reportable * * * was the sum of FOUR HUNDRED FOURTEEN THOUSAND SIX HUNDRED NINETY SIX DOLLARS ( $ 414,696.00). The filing of a false return for 1981 count charges: That on or about the 12th day of October, 1982, * * * CLYDE E. WILSON * * * did wilfully make and subscribe a 1981 U.S. Individual Income Tax Return, Form 1040, * * * which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 1040 he did not believe to be true and correct as to every material matter in that said Form 1040 reported on Line 1a, Part I, Schedule C gross receipts or sales of EIGHTEEN THOUSAND DOLLARS ( $ 18,000.00); whereas, as he then and there well knew and believed, the correct amount of gross receipts or sales reportable * * * was the sum of ONE HUNDRED SIXTY EIGHT THOUSAND DOLLARS ( $ 168,000.00).
Petitioner was convicted on all four counts of the indictment. His conviction was affirmed by the Court of Appeals for the Fifth Circuit. United States v. Wilson, 887 F.2d 69 (5th Cir. 1989). *469 Miscellaneous
Petitioner was a certified public accountant from 1967 until 1990, when he lost his license because of his conviction for filing false income tax returns for 1980 and 1981. Sabine's 1981 tax return showed, among others, deductions for management consulting fees ( $ 437,000) and for commissions ( $387,392). OPINION I. Statute of Limitations
Petitioner was a signatory to timely filed joint returns for each year here in question. Respondent's notice of deficiency was issued more than 3 years after the last of those returns was filed. Section 6501(a) provides, generally, that any tax must be assessed within 3 years of the date on which the tax return was filed. There are exceptions, however. Respondent has asserted one of those exceptions: respondent has asserted fraud. The fraud exception applies when there is a false or fraudulent return filed. Sec. 6501(c)(1). Unless the fraud exception applies, petitioner has an adequate (and complete) defense to each of the deficiencies and the related additions to tax determined by respondent. [1] We thus must determine whether the fraud exception applies. *470 In relevant part, the fraud exception states: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." Sec. 6501(c)(1). Respondent has the burden of proof with regard to the addition to tax for fraud. Sec. 7454(a); Rule 142(b). She must carry that burden by clear and convincing evidence. Rule 142(b). In order to carry her burden as to fraud, respondent must prove that some part of the underpayment for each of the years in question is due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Doncaster v. Commissioner, 77 T.C. 334, 336 (1981); Tschudy v. Commissioner, T.C. Memo. 1993-567. "Fraud is never presumed. It must be affirmatively established by clear and convincing evidence." Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The elements of fraud that respondent must prove under *471 section 6501(c)(1) are the same elements essential for imposing a fraud penalty under section 6653(b). Estate of Temple v. Commissioner, 67 T.C. 143, 159-160 (1976); Mobley v. Commissioner, T.C. Memo. 1993-60. Those elements are: (1) Underpayment of tax and (2) intent "to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." Parks v. Commissioner, 94 T.C. 654, 661 (1990). The first element requires respondent to establish the existence of an underpayment. We find that an underpayment of tax for both 1980 and 1981 does exist. Respondent has proven by clear and convincing evidence that petitioner received funds from Sabine during both 1980 and 1981 that were not reported on petitioner's tax returns for those years. Evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses, if any. Siravo v. United States, 377 F.2d 469, 473 (1st Cir. 1967); Franklin v. Commissioner, T.C. Memo. 1993-184. *472 Petitioner claims he held and spent the funds as an agent of Sabine, and therefore, the funds were not taxable to him. Even if we were to accept petitioner's agency argument, petitioner has only carried the burden of coming forward with evidence of offsetting expenses as to part of the underpayment. Accordingly, we conclude that at least part of the distributions in question constitutes gross income within the meaning of section 61. Thus, we find an underpayment of tax for both tax years 1980 and 1981. We now turn to the element of petitioner's intent. The nature of a taxpayer's intent is a question of fact to be resolved by consideration of the entire record. See Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Parks v. Commissioner, supra. Direct proof of intent is rarely available; fraudulent intent generally is proven by circumstantial evidence and the reasonable inferences to be drawn from such evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Wedvik v. Commissioner, 87 T.C. 1458, 1469 (1986); *473 Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); Mobley v. Commissioner, supra.A taxpayer's entire course of conduct is examined to establish the requisite intent. Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988). The decision of the Court of Appeals for the Ninth Circuit in Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601, sets forth a nonexclusive list of the "badges of fraud" that demonstrate fraudulent intent. Those badges include: (1) The understatement of income, (2) inadequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, (6) failure to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal activities, (9) dealings in cash, and (10) failure to make estimated tax payments. Id. at 307-308. A pattern of understating income and the taxpayer's experience *474 and knowledge of tax laws can be additional indicia of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461-1462 (6th Cir. 1984), affg. T.C. Memo. 1982-603. The facts of this case show at least some of those badges present in 1980 and 1981. The most probative evidence of fraud that respondent has presented is petitioner's conviction under section 7206 and 18 U.S.C. section 371. We have relied heavily upon both section 7206 and 18 U.S.C. section 371 convictions, as well as convictions under similar provisions, as proof of intent to evade taxes. See Avery v. Commissioner, T.C. Memo. 1993-344 (convictions under section 7206 are highly persuasive evidence of intent to evade taxes); Estate of Sawczak v. Commissioner, T.C. Memo. 1993-210 ("Absent some credible explanation * * * we think the convictions under section 7206(1), if not dispositive, are highly persuasive [evidence of intent to evade taxation]." (Fn. ref. omitted.)); Mobley v. Commissioner, supra (conviction *475 under 18 U.S.C. section 371 "creates a powerful inference" of fraudulent intent). Petitioner, an obviously intelligent and well-educated individual, was charged with, and convicted of, willfully and knowingly conspiring to defraud the United States and willfully making, subscribing, and filing returns, verified "under the penalties of perjury", which "he then and there well knew and believed" were understated. The indictment charged that the objective of the conspiracy was "to evade the payment of taxes" (emphasis added). It further charged that petitioner and Van Eman accomplished that by diverting corporate receipts to their personal bank accounts and then concealing their receipt of the diverted money by false entries on the books of account. Petitioner's conviction for activities in violation of section 7206 and 18 U.S.C. section 371 does not collaterally estop him from challenging respondent's allegation of civil fraud. Nevertheless, petitioner's conviction creates a powerful inference that petitioner possessed the willfulness necessary to satisfy the intent element of section 6501(c). See, e.g., *476 Avery v. Commissioner, supra.In addition to that inference, further badges of fraud are present in this case. They include the concealment of assets, the concealment of activities, and inadequate records. There was no way of telling from petitioner's or Sabine's tax return for 1980 or 1981 that corporate funds were transferred to petitioner, and there was no receivable on Sabine's balance sheet showing any obligation of petitioner to Sabine. Likewise, there were no contracts, minutes, or other documents put into evidence that reflect that petitioner was, as he claims, holding the funds transferred to him as an agent of Sabine. Moreover, petitioner testified that the Sabine funds were transferred to petitioner and Van Eman partly because petitioner feared that Schero might find a way to attach the assets of Sabine. A taxpayer's willingness to defraud another in business may point towards willingness to defraud the Government. Solomon v. Commissioner, supra at 1462. Furthermore, according to the indictment, petitioner falsified Sabine's records to show false deductions by classifying the transfers to himself *477 and Van Eman as consulting fees, legal fees, autos, and commissions. Indeed, there appear on Sabine's income tax return large deductions for consulting fees ($ 437,000) and commissions ($ 387,392). Those deductions were not adequately explained by petitioner. Another badge of fraud is illegal activity. The U.S. Department of Energy held petitioner and Van Eman personally liable for "layering", an illegal activity related to petitioner's ownership and management of Sabine. Thus, the badges of fraud present in one, or both, of the years in issue are: (1) An understatement of income, (2) a conviction for filing false returns for the years at issue, (3) concealment of assets, (4) concealment of activities, (5) inadequate records, and (6) illegal activities. In addition, petitioner had experience and knowledge about tax laws; he was a C.P.A. from 1967 until 1990, when he lost his license because of his conviction for filing false returns for 1980 and 1981. Taken together, those factors show that petitioner's understatement of tax in both 1980 and 1981 was a result of fraud. Petitioner's only rebuttal argument is that he was (or believed that he was) acting as an agent of Sabine, *478 and, therefore, he did not have the requisite intent to evade taxes. For reasons stated in the next section of this opinion we do not believe either (1) that petitioner was Sabine's agent or (2) that he has presented sufficient proof that he believed he was Sabine's agent to rebut respondent's showing of fraudulent intent. Accordingly, respondent has met her burden under section 6501(c)(1) for each year at issue. Therefore, the statute of limitations does not bar assessment and collection of tax for those years. II. Deficiency
Petitioners have assigned error to respondent's determinations of deficiency. In the petition, petitioners concede that petitioner received $ 475,000 for 1980 and $ 150,000 for 1981. As a fact relied on in support of their assignment of error, petitioners aver that those amounts were received as loans. Petitioners bear the burden of proof. At trial and on brief, petitioners have pursued the theory that the amounts in question were received, held, and spent by petitioner as an agent of Sabine. Petitioners were pro se when they filed their petition. We interpret their use of the term "loans" broadly. Respondent has not objected that petitioners *479 have attempted to try an issue not raised by the pleadings. See Rule 41(b). We will treat petitioner's agency claim as having been raised by the pleadings. No amendment is required. See id.
When a taxpayer receives funds "which he is obligated to expend in entirety for a specified purpose and no profit, gain, or other benefit is to be received by him in so doing, the funds are not includable in gross income." Ford Dealers Advertising Fund, Inc. v. Commissioner, 55 T.C. 761, 771 (1971), affd. per curiam 456 F.2d 255 (5th Cir. 1972). [2] We must now decide whether petitioner acted as an agent of Sabine in holding some or all of the transferred funds. In this regard we must determine to what extent petitioner received dominion and control over such funds. See Pascarelli v. Commissioner, 55 T.C. 1082 (1971). *480 In determining whether an agency relationship existed in this case, we are handicapped by the total lack of records of any sort; not even the most informal records exist. Thus, we rely on the facts as presented. Fact 1, petitioner received funds from Sabine in 1980 and 1981 that were not included on his income tax return for those years. Fact 2, $ 525,000 of such funds was transferred after Sabine ceased actively selling crude oil, and the other $ 100,000 was transferred shortly before that time. Fact 3, petitioner commingled the funds he received with his personal funds. Fact 4, petitioner was not obligated to spend the funds for specific purposes. Indeed, he was not burdened with restrictions as to the disposition of any of the funds in question. See Florists' Transworld Delivery Association v. Commissioner, 67 T.C. 333, 348 (1976) (lack of such a burden indicates that certain receipts were gross income to taxpayer). Those facts are uncontroverted and strongly suggest that no agency relationship existed. Other than petitioners' bare assertion, there is simply no evidence in the record to support their contention that petitioner was merely *481 acting as an agent on behalf of Sabine in receiving and spending the transferred funds. Petitioners appear to place great weight upon the evidence regarding petitioner's expenditures. We fail to see how the expenditures support petitioners' contention that petitioner spent the funds on Sabine's behalf. With respect to virtually every check as to which petitioner testified, the name or business of the payee sheds no light on the question of whether the expenditure was made in connection with Sabine's business or petitioner's own personal business. In fact, it appears from those expenditures that petitioner and Van Eman were using the funds on behalf of themselves to enter into a new business venture. Petitioner's name was on the Mariah stock, not Sabine's. Furthermore, we believe that petitioner had no intention of giving back the funds he received from Sabine. The funds were commingled with his own funds in his personal bank account, and petitioner did not keep adequate records regarding his use of the funds. Therefore, there was no way to tell the funds apart. In addition, the only reason petitioner gave money to Sabine in 1981 was because petitioner and Van Eman had withdrawn *482 all of Sabine's funds and Sabine needed cash to pay its expenses. That does not constitute an expenditure made by petitioner on behalf of Sabine; it more closely resembles a capital contribution to Sabine. Thus, according to all the facts, we find that petitioner was not acting on Sabine's behalf nor subject to Sabine's control. Petitioner had complete dominion over the transferred funds; petitioner took funds from Sabine and tried to enter a new business venture for his own benefit. Petitioners have not carried their burden of showing that petitioner received the funds in question as an agent of Sabine. We find that petitioner was not an agent of Sabine. We hold that the receipts in question constitute items of gross income, as claimed by respondent. Petitioners have not shown any offsetting deductions. Therefore, respondent's determination of a deficiency, and the amount of such deficiency, for both 1980 and 1981 is correct. III. Additions to Tax
We turn last to petitioner's liability for the addition to tax for fraud under section 6653(b). Section 6653(b), in pertinent part, states: "If any part of an underpayment * * * of tax required to be shown on a return *483 is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." As noted above, the elements of fraud respondent must prove under section 6501(c)(1) are the same elements needed to impose the fraud penalty under section 6653(b). Estate of Temple v. Commissioner, 67 T.C. 143 (1976); Mobley v. Commissioner, T.C. Memo. 1993-60. We previously discussed those elements and found that the underpayment was due to fraud. See supra sec. I. We will not repeat our analysis here. Accordingly, we find that the addition to tax for fraud under section 6653(b) for both 1980 and 1981 is appropriate. Decision will be entered under Rule 155. Footnotes
1. Petitioners did not set forth the statute of limitations as an affirmative defense in the petition. See Rule 39. Petitioners were pro se at the beginning of the pleading stage, and no amendment to the pleadings was ever filed once counsel was retained. We, nonetheless, accept that defense. Respondent never objected to its inclusion in petitioners' trial memorandum and, in fact, conceded the applicability of that defense at trial and included a finding of fact with regard thereto. See Rule 41(b)(1).↩
2. See also New York State Assn. of Real Estate Bds. Group Ins. Fund v. Commissioner, 54 T.C. 1325 (1970); Angelus Funeral Home v. Commissioner, 47 T.C. 391 (1967), affd. 407 F.2d 210↩ (9th Cir. 1969).